MIKE BINE et al. v. JACKSON COUNTY et al.,
Appellants.

In Banc, December 8, 1915.

1. **LOCAL OPTION ELECTION: Number of Petitioners: Comparison With Poll Books.** The petition for a local option election signed by one-tenth of the qualified voters of that part of the county which embraces no city having 2500 inhabitants or more, vests the County Court with jurisdiction to call the election; and if so signed, the court is not without jurisdiction to call the election, on the sole ground that it is not signed by one-tenth of the qualified voters as shown by the poll books of the last general election. The proviso of the statute (Sec. 7238, R. S. 1909) declaring that "the County Court shall determine the sufficiency of the petition presented by the poll books of the last previous general election" simply means that the court shall take the presumptive evidence of the poll books that the names truly set forth the qualified voters who reside in the locality entitled to hold the election. If the petition is in fact signed by one-tenth of the qualified voters of such locality, that is enough. The law confers the right of petition upon the resident qualified voters, not upon the names on the polling lists; and if one-tenth of the resident qualified voters signed the petition, an election ordered by the County Court will not be held invalid, although an order therefor did not recite a comparison of the names of the petitioners with those on the poll books.

2. ————: ————: ————: **Failure of Court.** The right given by the statute to one-tenth of the qualified voters of a local option district to petition for a local option election therein cannot be taken away by the failure or omission of the County Court to look to the poll books as evidence that the petitioners possessed the statutory qualification and residence.

3. **CONSTRUCTION OF STATUTE: Harmonizing Terms.** A construction which defeats the chief object of a statute will never be forced by giving its terms a meaning beyond what is expressly stated. The end had in view, and the paramount intention of the lawmaker, afford a strong reason for harmonizing a statute.

4. **LOCAL OPTION ELECTION: Number of Petitioners: How Determined.** The poll books are not the only method of determining whether a petition for a local option election has been signed by one-tenth of the qualified resident voters of the

locality, nor does the statute say that they shall be the only test. They are not an infallible enumeration. The proviso only means that, nothing else appearing, the County Court must ascertain from the poll books whether or not the petition is signed by one-tenth of the qualified resident voters; but it does not confine their examination to those books.

5. ———: ———: ———: **Explicit Finding.** An explicit finding by the County Court that the petition for the local option election outside of cities is signed by one-tenth of the qualified voters resident therein, is a substantial compliance with the statute, and (however that fact was ascertained) vested the court with ample authority to order an election and give due notice thereof.

6. ———: **Irregularities.** The courts will not set aside a local option election on account of mere irregularities not essential to its valid holding.

Appeal from Jackson Circuit Court.—*Hon. Frank G. Johnson*, Judge.

REVERSED.

*A. L. Cooper, Ross J. Ream* and *Guthrie, Gamble & Street* for appellants.

(1) The county court is a court of record, and, in so far as it acts judicially, its judgments import the same verity, and are as conclusive against collateral attack, as those of any other court. Jeffries v. Wright, 51 Mo. 221; Johnson v. Beazley, 65 Mo. 256; Sims v. Gray, 66 Mo. 616; Fulkerson v. Davenport, 70 Mo. 541; Scott v. Crews, 72 Mo. 261; State v. Evans, 83 Mo. 322; State ex rel. v. Wooten, 139 Mo. App. 228; State v. Gamma, 149 Mo. App. 704; State ex rel. v. Thornhill, 174 Mo. App. 469. (2) The rule of conclusiveness applies to a preliminary finding as to the existence of facts supporting the jurisdiction. Lingo v. Burford, 112 Mo. 149; State v. McCord, 227 Mo. 526. (3) The mere exercise of jurisdiction conclusively imports a finding of the facts necessary to support the jurisdiction, unless the lack of jurisdiction affirmatively appears upon the face of the record. Snoddy v. Pettis

County, 45 Mo. 363; State ex rel. v. Young, 84 Mo. 94; State v. Searcy, 39 Mo. App. 400; State v. Dugan, 110 Mo. 145; State v. Hitchcock, 124 Mo. App. 104.    (4) The order of the county court calling the election did not affirmatively show want of jurisdiction for lack of a proper petition.    Sec. 7238, R. S. 1909;    State v. Searcy, 39 Mo. App. 400; State v. Searcy, 111 Mo. 236; State v. Dugan, 110 Mo. 145; State v. Foreman, 121 Mo. App. 502.    (5) It was not necessary for the county court to test the qualification of the petitioners by the last preceding poll books.    State v. Carter, 165 S. W. 783; State v. Foreman, 121 Mo. App. 507.    (6) The notice of contest was fatally defective for want of any averment that the contestants were polled at the last previous general election.    State ex rel. v. Smith, 104 Mo. 667; Bowers v. Smith, 111 Mo. 46; Hale v. Stimson, 198 Mo. 146; Gillespie v. Dion, 18 Mont. 183, 33 L. R. A. 703; 15 Cyc. 401.    (7) An election contest does not involve inquiry into the question as to whether a valid election was ever held; but, in contesting the results of the election, the right to hold the election is conceded, and the contest pertains only to the regularity of the proceedings at the election as affecting the rights of the contestant.    Sec. 7242, R. S. 1909; Nance v. Kearbey, 251 Mo. 388; Norman v. Thompson, 72 S. W. 64; Lowry v. Briggs, 73 S. W. 1062; State ex rel. v. Tucker, 54 Ala. 210; Commissioners v. Johnson, 145 Ala. 556.

*I. B. Kimbrell* and *L. H. Waters* for respondents.

(1) The averment in the contestants' notice, that "they are qualified voters of Jackson county, Missouri, and reside outside the corporate limits of Kansas City and Independence," is a literal compliance with the statute.    R. S. 1909, sec. 7244. (2)    A contest under Sec. 7242, R. S. 1909, is a direct and not a collateral attack on a local option election.    State v. Searcy, 39 Mo. App. 401; Riggins v. O'Brien, 34 Mo. App. 613.

In an election contest the court may look behind the record and decide according to the facts upon any essential question. State ex rel. v. Ross, 161 Mo. App. 682; State ex rel. v. Ross, 245 Mo. 45; State ex rel. v. Slover, 134 Mo. 15. The remedy by contest accomplishes through one plain, practical, summary proceeding all that is necessary to do full and complete justice. State ex rel. v. Smith, 104 Mo. 669. Where by statute a new right is given and a new remedy provided, the right can be vindicated in no other way than that provided by statute. State ex rel. v. Slover, 134 Mo. 14; State ex rel. v. Ross, 245 Mo. 44. The general rule is that remedies expressly provided by statute to enforce rights created by statute are preclusive. Nance v. Kearbey, 251 Mo. 387; State ex rel. v. Spencer, 164 Mo. 34. If a contest of a local option election under 7242 is a direct attack, appellants' authorities cited in paragraphs 1, 2 and 3 of their brief have no application whatever. (3) The county court on the face of its record and under the evidence was without jurisdiction. (a) The county court shall determine the sufficiency of the petition presented, by the poll books of the last previous general election. R. S. 1909, sec. 7238. Section 7238 provides for the qualifications of petitioners upon a petition for the holding of a local option election, and for an official place to obtain the number required, or a basis of computation of such number. State v. Carter, 257 Mo. 85. The law further provides that the county court shall ascertain who are qualified voters by the poll books of the last previous general election. State v. Foreman, 121 Mo. App. 507; State ex rel. v. Bird, 108 Mo. App. 163; State ex rel. v. Baldwin, 109 Mo. App. 573. The court clearly did not "ascertain the qualification of the petitioners as provided by statute," nor did the court obtain the number required from the poll books of the last previous general election which was the basis of computation of such number. The court found and decided that the

petition was signed by one-tenth of the qualified voters then residing in the county. It is a case where *expressio unius est exclusio alterius* applies. The finding did not authorize the order. Adv. Co. v. Castleman, 165 Mo. App. 578; Bank v. Lumber Co., 102 Mo. App. 82. We do not regard that it was necessary for the record of the county court to show how it ascertained the qualifications of the petitioners so long as it does not show they pursued an unauthorized method. State v. Foreman, 121 Mo. App. 508. If the court in its finding had omitted the sentence "who now and at the time of the petition resided in the county outside the cities of Kansas City and Independence," it would be assumed that the court did its duty and ascertained the qualifications of the petitioners as required. But this record is not silent, and the testimony we offered does not contradict the record. (b) The offered testimony, if it was competent and material, should be considered as a part of the evidence on this appeal. We offered to prove by the judges of the county court, who ordered the election in this case, that the sufficiency of the petition was not determined by the poll books of the last previous general election. Counsel for appellants conceded they would testify pursuant to the offer. The offer to prove a material fact by a competent witness must stand for the fact itself. State v. Steifel, 106 Mo. 134; 1 Thompson, Trials, sec. 685; Neff v. Neff, 20 Mo. App. 186; County v. Hile, 112 U. S. 186; Eschback v. Hurtt, 47 Md. 61; Robinson v. State, 1 Lea (Tenn.), 673; State v. Kelier, 263 Mo. 552. (c) The record shows that the petition was referred to the county counselor, an attorney for appellant, who prepared the court's order, and reported that he had not determined the sufficiency of the petition by the poll books. We offered to prove by Mr. Smith and three other gentlemen who assisted him, that they compared the petition with the poll books (under the court's order), and found 387 petitioners whose names

were not on the poll books of the last previous general election, and that there were 6407 votes cast as shown by the poll books at the last previous general election outside of Kansas City and Independence.   (4) It was necessary for the court to test the qualifications of the petitioners by the poll books of the last previous general election. State v. Carter, 257 Mo. 85; State v. Foreman, 121 Mo. App. 507; R. S. 1909, sec. 7238.

*Rozelle, Vineyard & Thacher, Frank A. Boys* and *James K. Houghton, amici curiae.*

## OPINION.

BOND, J.—This is a contest of a local option election held on the 22nd of August, 1914, in that portion of Jackson county outside of Kansas City and the city of Independence.   A canvass of the votes showed that a majority of five hundred and thirty-six were cast against the sale of spirituous and intoxicating liquors.   Thereupon Mike Bine filed a notice of contest of said election on the following grounds.

"That said petition was not signed by one-tenth of the qualified voters of said county outside of the corporate limits of said cities who voted at the last previous general election and whose names appear on the poll books of said election, and the county court did not so find in its order.

"That said petition was otherwise defective and insufficient to confer jurisdiction on said county court to make said order.

"That the order of the county court for said election shows on its face that said court did not determine the sufficiency of said petition by the poll books of the last previous general election as the court was required to do by section 7238, Revised Statutes 1909.

"The order of the court under and in pursuance of which said election was held expressly states that

the court found and adjudged that said peti-
tion was signed by one-tenth of the qualified voters
of Jackson county, Missouri, who now (July 23, 1914)
and at the time of the filing the petition (July 14, 1914)
reside outside of the corporate limits of the cities of
Kansas City and Independence, and who are qualified
to vote for members of the Legislature in said county,
and that said order is therefore a nullity.

"Contestants, for grounds and causes aforesaid,
ask that the court declare and adjudge that the peti-
tion filed in the county court as aforesaid was defective
and insufficient to confer on the county court jurisdic-
tion to make any order in the premises, and that the
said order of the county court was not authorized by
law and was and is a nullity, and that said election be
declared to have been held without proper authority
and be set aside and for naught held."

Jackson County filed an answer, wherein after ad-
mitting the holding of the election and the majority
vote and denying other allegations in the notice of
contest, it averred that the petition presented to the
county court on which it based its order for the elec-
tion was signed by one-tenth of the qualified voters re-
siding in said county outside the cities of Kansas City
and Independence and whose names appear on the poll
books of the last previous general election.

The trial judge announced that the petitioners
must not only have been qualified voters but must also
have been included in the poll list of the voters at the
last previous general election, and that in his view the
county court's order for the election showed that the
county court had not determined the character and
number of the petitioners for the holding of the elec-
tion by a comparison with the poll books of the last
previous general election.

After permitting the parties to make offers of
testimony on the issue joined, and after considering
the petition filed with the county court for the calling

the election and the finding and judgment of the county court (which orders so far as necessary will hereafter be set out), the trial court rendered a judgment in favor of the contestants and against Jackson County, reciting therein as grounds of this finding that the county court failed to determine the sufficiency of the petition for the election as required by the statutes of the State of Missouri, and hence, was without jurisdiction to order the election, and that the election so held was a nullity. From this judgment the contestee, Jackson County, Missouri, perfected an appeal to this court.

## I.

The judgment of the trial court can only be upheld, if at all, by a concurrence on our part with his construction of the findings of the county court on the petition for an election upon which it based its order calling the election; and, the section of the statute governing the calling of local option elections. The pertinent parts of the section of the statute are, to-wit:

"Section 7238.     Upon application by petition, signed by one-tenth of the qualified voters of any county who shall reside outside of the corporate limits of any city or town having, at the time of such petition, a population of twenty-five hundred inhabitants or more, who are qualified to vote for members of the Legislature, in any county in this State, the county court of such county shall order an election to be held in such county at the usual voting precincts for holding any general election for State officers . . . to determine whether or not spirituous and intoxicating liquors, including wine and beer, shall be sold within the limits of such county lying outside of such corporate limits of such city or town. . . . Provided, further, that the county court shall determine the sufficiency of the petition presented by the poll books of the last previous general election."

The finding of the court upon the petition is, to-wit:

"The court doth find and adjudge that said petition is signed by one-tenth of the qualified voters of Jackson County, Missouri, who now and at the time of such petition reside outside the corporate limits of the cities of Kansas City and Independence in said county and who are qualified to vote for the members of the Legislature in said county."

The crux of this case is whether the record shows the county court was without jurisdiction to order the election. It is not denied that the petition was in proper form and that the number of the petitioners was greater than ten per cent of the number of voters as shown in the poll books of the last general election. But it is contended by respondent that the jurisdiction of the county court to order a local option election is dependent on a previous finding and adjudication by it that the names contained in a petition for such election must be one-tenth of the qualified voters as they are set forth in the poll books of the last previous general election, and that the court would have no jurisdiction to order such election upon a petition signed by one-tenth of the qualified voters of the part of the county entitled to vote at such election.

It is further claimed that the foregoing finding of the county denuded it of any jurisdiction and that the election thereafter held was void.

We are unable to accept either the premises or the conclusion of the respondent. The above quoted statute makes but one condition as to the sufficiency of the petition, which is that it shall be signed by one-tenth in number of the qualified voters who are qualified to vote for members of the Legislature. No question can exist under these terms of the statute, that a petition thus signed and presented to the county court is all that can be done by the petitioners in their assertion of their statutory right and invested the county

court with jurisdiction to make a finding and order an election in the manner prescribed in section 7238 of the Revision of 1909. Being thus clothed with power to adjudge the sufficiency of the petition and order an election, the statute further points out to the county court a ready means of determining the sufficiency of the petition by recourse to the poll books of the last general election. All that the language of the provision of the statute to that effect means (in view of the fundamental requisite that the signers of the petition shall be qualified voters who shall reside in the county) is that the county court shall take the presumptive evidence of the poll books that the names truly set forth the qualified voters who reside in the locality entitled to hold the election. It would be repugnant to the primary prerequisite of qualification and residence which is made the basis of the right to petition for the election, to hold that the right thus given and to secure which the law was enacted, could be taken away from the citizens who had in all respects complied with the statute by the omission of the county court to look to the poll books as evidence that the petitioners possessed the statutory qualification and residence.

The law confers certain rights in respect to the holding of such elections upon the qualified voters and residents, not upon the mere names contained in the polling list. If the latter proposition was true then a petition which was a replica of one-tenth of such names would be sufficient although the actual facts were shown to be that the names on the petition were not one-tenth of the qualified voters then residing in the county. The poll books may often exceed the qualified voters owing to death and removals. In that event such an election could not be called without obtaining a greater number of signers to the petition than one-tenth of the actual voters. This, however, would be absurd under the statutory hypothesis that one-tenth of the resident quali-

fied voters have the absolute right to petition for the calling of such an election and that upon a finding of that number of signers the court must order the election. It is clear, therefore that the purpose of the statute was simply to point out, as an aid to the finding of the court, an accessible and presumptively correct list of voters which it could use without further inquiry as evidence of the number of qualified voters then living in the county.

This interpretation harmonizes the section as an entirety and avoids a construction which would defeat its specific object, and is in accordance with the time-tested rule that the end had in view and the paramount intention of the lawmaker, affords a strong reason for harmonizing the language of the statute. Or put differently, a construction which defeats the chief object of the law will never be forced upon it by giving its terms a meaning beyond what is expressly stated. No such necessity arises in this case, for although the proviso requires that the county court "shall determine the sufficiency of the petition by the poll books," yet it does not in *totidem verbis* say that this shall be the *only* method of ascertaining who are the qualified voters. We know judicially, and the Legislature knew, that the poll books are not, and cannot in the nature of things be, an infallible enumeration of the qualified voters in any county where registration previous to voting is not prescribed by law. What the provision intended was that nothing else appearing the county court must find by poll books whether or not the petition was sufficient to show that it was signed by one-tenth of the qualified voters residing in the county. For it was to them the statute gave the right by proper application to compel the calling of an election. To simplify the investigation which the county court is directed to make and to further the object of the petitioners to put the issues of local option before the people, the statute inserted the proviso that the county

court should consider the prima-facie evidence of the poll books as to the qualifications and number of the petitioners, but it nowhere in words or by necessary implication confined the view of the county court to the poll books alone.

Our conclusion is that the explicit finding of the county court in the case at bar that the petitioners embraced one-tenth of the qualified voters residing in the county, was a substantial compliance with the statute and vested that court with ample authority to order an election and give due notice thereof, as the record shows was done. There is nothing to the contrary in the remark contained in State ex rel v. Carter, 257 Mo. l. c. 85. The learned writer of that opinion was construing another statute and remarked *en passant* that the statute then under review, unlike the present statute, contained no language referring to an official place or basis for computation of petitioners for an election, but he wholly refrained from intimating that the court under the present statute could look to nothing as evidence of the number and character of the petitioners except the poll books. On the contrary the whole trend of the correct reasoning in the case cited, is in harmony with what has been said heretofore in the discussion of the meaning of the present statute.

## II.

It must be borne in mind in considering the present statute that its main provisions have been the law since 1887; that its constitutionality has been established against continuous and many-sided attacks; that it is the embodiment of enlightened public policy, and permits the people to decide for themselves in what locality spirituous and intoxicating liquors shall be sold. The great object of the law was to make this issue one quickly determinable by the preponderance of local public sentiment; hence, the statute has pro-

vided for its prompt submission to the will of the people as expressed in the ballot box.

In the instant case there is not the faintest suggestion that the result of that election does not reflect the unbiased choice of the voters in that part of Jackson county outside the cities of Kansas City and Independence. It is not denied that the opponents of the proposition secured every hostile ballot obtainable in the territory, nor that the election was free from any form of attack for fraud or unfairness, nor that it expresses the deliberate choice of the people.

If the genius of the English chart of liberty found concrete expression when twelve men were put in a jury box, then it is no less true that the highest ideal of the American Republic is realized when the thought of the people is expressed in an uncorrupted ballot which has been honestly counted and truthfully announced. The sanctity of the ballot box is the basic principle of the evolution of all free government; for all of its powers, faculties and activities, for good or evil, are directed and controlled by the votes of an enlightened citizenry. The whole philosophy of liberty of thought in life and society finds its *raison d'etre* in the sacred right of each citizen to express his mind and purpose by his voluntary ballot. When this is done not only is the highest duty of citizenship performed, but the dynamic which moves the entire machinery of government in a free State or community is instantly and resistlessly applied, and the "will of the people expressed in the ballot box, becomes the supreme law." The choice of the people thus expressed should be subject to no attack which does not go to the integrity of the election.

It has been well said in a leading case in this State, "Courts justly consider the chief purpose of such laws, namely, the obtaining of a fair election and an honest return, as paramount in importance to the

minor requirements which prescribe the formal steps to reach that end; and, in order not to defeat the main design, are frequently led to ignore such innocent irregularities of election officers as are free of fraud and have not interfered with a full and fair expression of the voter's choice." [Bowers v. Smith, 111 Mo. 45.]

None of the contentions of learned counsel for respondents go to the vital question of the fairness and the authoritative force of the election by the people of a part of Jackson county whereat it was decreed that spirituous and intoxicating liquors should no longer be sold in that locality. It is not the province of the court to set aside that result on account of mere irregularities not essential to the valid holding of the election. The contrary view was taken by the learned trial judge. This judgment was manifestly erroneous and should be, and is, reversed. All concur except *Woodson, C. J.,* not sitting.