[Civil No. 2326.  Filed April 18, 1925.]

[235 Pac. 150.]

# STEPHEN H. ABBEY, Plaintiff, v. E. L. GREEN, Defendant.

1. QUO WARRANTO—BURDEN OF DEFENDANT TO PROVE TITLE TO OFFICE SUSTAINED.—In *quo warranto* proceeding on verified complaint under Civil Code of 1913, paragraphs 1596–1602, to try title to office as judge of superior court of Pinal county, under paragraph 1599, defendant *held* to have sustained burden of proving title to office under evidence of election at recall election.

2. JUDGES—GROUNDS OF RECALL NEED NOT BE ATTACHED TO EACH SHEET OF PETITION.—Grounds, assigned for recall of judge in petition, need not be attached to each sheet, as more than one sheet is contemplated.

3. JUDGES—PETITION FOR RECALL NEED NOT ALLEGE SPECIFIC MISCONDUCT.—Grounds assigned in petition for recall of judge need not charge specific misconduct in office; any reasons of electorate for wishing to be rid of him being sufficient.

4. JUDGES—RECALL PETITION, FAILING TO GIVE PLACE OF RESIDENCE, STREET, AND NUMBER OF SIGNERS, NOT FATALLY DEFECTIVE.— Petition for recall of judge which did not give place of residence, street, and number of signers, as required by Civil Code of 1913, paragraphs 1596–1602, 3340–3356, supplementing Constitution, article 8, subdivision 1, *held* not fatally defective in absence of showing that signers lived in towns with streets and residences named and numbered, especially where no objection was made until after election.

5. OFFICERS—OFFICER MAY OBJECT TO DEFECTS OF RECALL PETITION BEFORE BOARD OF SUPERVISORS.—Where petition is being circulated for recall from office, any defects in or objections to petition may be taken before board of supervisors, and, if defects were such as to defeat jurisdiction of board, preventative measures might be taken.

6. OFFICERS—BOARD OF SUPERVISORS HAS DUTY TO EXAMINE RECALL PETITION FOR ITS SUFFICIENCY.—Board of supervisors has manda-

2.  Scope and definition of initiative, referendum and recall, see note in **L. R. A.** 1917B, 15.

tory duty to examine recall petition, when filed, as to sufficiency of signatures.

7. OFFICERS—SIGNATURES ON RECALL PETITION PRESUMED GENUINE.— Signatures on recall petition will be presumed genuine until proof of contrary is seasonably made.

8. JUDGES—EXAMINATION OF RECALL PETITION BY BOARD OF SUPERVISORS SUFFICIENT.—Inspection by board of supervisors of petition for recall of judge, apparently regular, and conclusion from knowledge of signers and county recorder's examination of registration that petition was signed by necessary electors *held* sufficient, notwithstanding signers were' not shown to be on great register for year of recall election.

9. OFFICERS—DEFECTS IN PROCEEDINGS FOR RECALL MUST BE ACTED ON PROMPTLY.—In proceedings for recall, knowledge of any defects before election must be acted on promptly to prevent election and consequent expense, or to correct known errors, or they will be regarded as waived.

10. OFFICERS—CANDIDATES NEED NOT FILE NOMINATION PETITION TO GET ON TICKET AT RECALL ELECTION.—In order to get on ticket at recall election, candidates need not file nomination petition as well as nomination paper announcing candidacy, as required in primaries under Civil Code of 1913, paragraphs 3012, 3013, in view of paragraph 3349, governing requirements for candidate to get on ticket at recall election, which prescribed only filing of nomination paper signed by certain percentage of electors.

11. OFFICERS—BALLOT NEED NOT MAKE RECALL INDEPENDENT QUESTION FROM THAT OF WHO SUCCESSOR SHOULD BE.—Ballot in recall election, in form prescribed by Civil Code of 1913, paragraph 3348, is sufficient, and need not separate issue of recall from question of who successor should be, in view of Constitution, article 8, section 4.

12. ELECTIONS—REGISTRATION LAWS SHOULD BE CONSTRUED SO AS TO UPHOLD CITIZEN'S RIGHT TO VOTE.—Registration laws should be construed so as to uphold citizen's right to vote.

13. OFFICERS—PERSONS REGISTERED IN PRECEDING REGISTRATION PERIOD ENTITLED TO VOTE AT RECALL ELECTION HELD DURING PERIOD.— Where recall election was held during registration period, required by Constitution, article 7, section 12, as provided by Civil Code of 1913, paragraphs 2883, 2884, qualified electors under paragraph 2879, as required by Constitution, article 8, section 1, registered in preceding period, *held* entitled to vote, as recall statutes do not provide for special registration, and therefore must ·be governed by last general registration.

13. See 9 R. C. L. 1037.

14. JUDGES—RECALL PROVISIONS OF CONSTITUTION NOT IN CONFLICT
    WITH FEDERAL CONSTITUTION.—Constitutional provisions for re-
    call of judges *held* not in conflict with federal Constitution, as
    being contrary to public policy and undermining independence of
    courts.

See (1) 32 Cyc., p. 1461. (2) 33 C. J., p. 945. (3) 33 C. J., p.
945. (4) 33 C. J., p. 945 (1926 Anno.). (5) 29 Cyc., p. 1406. (6)
29 Cyc., p. 1406. (7) 29 Cyc., p. 1406. (8) 33 C. J., p. 945
(1926 Anno.). (9) 29 Cyc., p. 1406. (10) 29 Cyc., p. 1406. (11)
29 Cyc., p. 1406. (12) 20 C. J., p. 82. (13) 29 Cyc., p. 1406.
(14) 12 C. J., p. 743 (1926 Anno.).

Original proceedings in *quo warranto*. Complaint
dismissed.

Mr. Thomas W. Nealon and Mr. Thomas A. Flynn,
for Plaintiff.

Messrs. Barnum & Flanigan and Messrs. Kibbey,
Bennett, Gust, Smith & Lyman, for Defendant.

ROSS, J.—This is an original *quo warranto* pro-
ceeding brought upon the verified complaint of Ste-
phen H. Abbey, after the Attorney General had
refused to bring the action, and is in accord with the
statutory law governing such proceeding. Chapter
8, title 6, Civ. Code 1913. The complaint sets forth
that at the November, 1922, general election plaintiff
was elected to the office of judge of the superior
court of Pinal county, for the term beginning Jan-
uary 1, 1923, and ending December 31, 1926, and that
thereafter he qualified and entered upon the dis-
charge of the duties of such office and continued to
perform such duties until on or about July 8, 1924,
when defendant E. L. Green unlawfully usurped said
office.

The answer admits plaintiff's election and oc-
cupancy of said office up to July 7, 1924, and alleges
that on said date defendant qualified and entered

upon the discharge of its duties; the plaintiff having been theretofore, on June 28th, recalled and defendant elected to fill the unexpired term. In the answer defendant justifies his claim to the office, and the right to exercise and enjoy its privileges and discharge its duties, by reason of a regular and legal compliance with the recall provisions of the Constitution and the laws of the state, and sets up the steps taken thereunder as follows:

(1) The filing on May 26, 1924, with the clerk of the board of supervisors of Pinal county, of a recall petition, signed by more than 25 per centum of the qualified electors of the county voting for judge at the preceding election, demanding the recall of plaintiff and giving the reasons therefor.

(2) The giving of immediate notice in writing to plaintiff by such clerk of the filing of the recall petition and the grounds thereof, and his right to make and have printed on ballot a defense of his official conduct in not to exceed 200 words.

(3) The failure of plaintiff to make or deliver any defense to the clerk to go on ballot or to resign.

(4) The ordering on June 4th by the board of supervisors of the recall election to be held on June 28, 1924.

(5) The publishing in a newspaper of general circulation throughout Pinal county, not less than 10 days preceding the date of election, a notice thereof.

(6) The candidacy for such office of defendant, Green, and one H. G. Richardson by the filing of nomination papers signed by 5 per centum of the qualified electors of Pinal county.

(7) The adoption and use at such election of the form of ballot set out in paragraph 3348 of the recall law, with the names of plaintiff, Stephen H. Abbey, defendant, E. L. Green, and said H. G. Richardson printed thereon alphabetically without party designation, and also the grounds for recall.

(8) That at election 1,588 votes were cast, of which defendant received 779, plaintiff 484, Richardson 321, and scattering 4.

(9) That the board of supervisors on July 7, 1924, canvassed the returns and declared therefrom that defendant had received the highest number of votes, and was duly elected, and accordingly issued to defendant a certificate of election.

The plaintiff in his reply to answer objected to the sufficiency of practically every step taken towards his recall; and also the validity of the recall law as affecting the judiciary. He asserts that the recall petition was defective, in that the grounds of recall appeared only on the last sheet, and after the oath and signature of the circulator, instead of appearing on each sheet; that the grounds of recall did not relate to his official conduct, but were merely scandalous and impertinent; that the signers of petition did not give their street and number, or the street or other designation of residence; that the clerk of the board of supervisors did not, before notifying the plaintiff that petition had been filed, ascertain and determine it had been signed by the necessary number of qualified electors; that the board in ordering recall without taking testimony of witnesses showing the petitioners were qualified electors, and in not giving anyone an opportunity to appear and object to petition acted arbitrarily; that petition was considered and order made at a special meeting of the board; that the board accepted the affidavit of the county recorder to the effect that she had compared signatures and names on petition with the registers of 1922 and 1924 and the result thereof, after making order for recall election; that on the date of filing petition, May 26th, there were only 182 of the signers of recall petition registered in 1924, and only 186 on June 4th, the date recall election was ordered;

that the ballot used at election did not provide for a separate vote on the issue of whether the plaintiff should be recalled; that the names of the defendant, Green, and said Richardson were placed on ballot without authority of law, neither of them having filed a nomination petition; that other persons than those whose names appeared upon the register of 1924 were permitted to vote at election, to a number in excess of defendant's plurality; that the board of supervisors had no jurisdiction; and that our constitutional and statutory law providing for the recall of judges contravenes the Constitution of the United States.

On the fourth day of December, 1924, and after issues formed, Ben L. Rudderow was appointed referee to take and reduce to writing all evidence offered, and report the same. This has been done. The respective counsel have filed their briefs, have been heard in oral argument, and the case is now ready for disposition.

Article 8, subdivision 1, of the Constitution, provides for the recall, and this article is supplemented by chapter 2, title 22, of the Civil Code of 1913; and, while the statute was intended to facilitate the operation of the recall provision of the Constitution, it adds very little to it except the provisions for the form of petition and its verification, the form of ballot, and the payment of campaign expenses. A statement of the requirements of the statutory law will include and cover the terms of the Constitution. Briefly, it is provided that every elective officer may be removed by the qualified electors of his district. The petition for the removal of such officer must be signed by such electors equal in number to at least 25 per centum of the number of votes cast at the last preceding election for the office. Each signer of petition shall add to his signature his place of

residence, giving the street and number thereof, and the petition must contain a general statement in not more than 200 words of the grounds for such removal; and such petition, if for the removal of a county officer, superior court judge, or member of the legislature, must be filed with the clerk of the board of supervisors. Immediately upon the filing of petition with the clerk of the board of supervisors it is made his duty to notify in writing, over his signature, the officer against whom the petition is filed that petition is filed, and to set forth the grounds thereof, and to inform such officer that he will be allowed to make and have printed on the ballot a statement, containing not more than 200 words, defending his official conduct. The officer is allowed ten days after such notification in which to make out and deliver to the clerk of the board of supervisors a statement of his defense, and, if he fail to make such statement within that time, he is deemed to have waived the right to do so. The officer may resign, in which case his resignation must be accepted and the vacancy filled as provided by law. If he fail to resign for five days after the recall petition is filed, a special election shall be ordered, to be held not less than twenty nor more than thirty days after the order, to determine whether he shall be recalled. When such officer is a county officer, or judge, or other officer of a superior court, or a member of the legislature, the election shall be called by the board of supervisors. If the recall is against a county officer, the notice of election must be published for not less than ten days in a newspaper of general circulation throughout the county by the board of supervisors. A form of notice is prescribed, as also form of ballot, on which it is provided there shall be printed the reasons, as set forth in petition, for demanding the officer's recall

and also the justification of the officer, if he make one, in not more than 200 words. The candidates are required to be put on the ballot without party designation. It is also provided the name of the officer against whom the recall petition is filed shall be placed upon the ballot, unless he request otherwise in writing, and that other candidates for the office may be nominated, to be voted for at the election, by 5 per centum of the qualified electors of the electoral district signing a nomination paper to that effect.

The recall cannot be invoked until six months after the officer takes his office, except in case of members of the legislature, and only one recall petition and election can be had against an officer during his term at the expense of the taxpayers.

By reference the general election laws, so far as not inconsistent with the recall statutes, are adopted. Paragraph 3350 of the Recall Law (Civ. Code 1913) reads as follows:

"The candidate who receives the highest number of votes shall be declared elected for the remainder of the term. Unless the incumbent receive the highest number of votes he shall be deemed to be removed from office, upon qualification of his successor. In the event that his successor shall not qualify within five days after the result of said election shall have been declared, the said office shall be vacant, and may be filled as provided by law. The incumbent shall continue, however, to perform the duties of his office until the result of said election shall have been officially declared."

The general rule in a *quo warranto* proceeding is that the defendant must not only allege but he must prove by a preponderance of the evidence that he has title to the office. 22 R. C. L. 716, § 41. Whether this should have been so or not, this burden was assumed by the defendant in this case. We

think the reason of the rule as originally announced was that the writ was considered a prerogative one, issuing in England at the instance of the king, and in this country upon the motion of the legal representative of the people. Here, however, the Attorney General refused to institute the proceeding upon request from plaintiff, and it may be truthfully said the litigation is between plaintiff and defendant, and has for its purpose the trial of the title to the office of judge of the superior court of Pinal county. In such case, the sovereignty not being a party to the suit, the reason for casting the burden upon the defendant fails, and the general rule prevailing between private litigants probably is the one that should be invoked. *State* v. *City of Harper,* 94 Kan. 478, Ann. Cas. 1917B, 464, and note, 146 Pac. 1169. Be that however as it may, we think the defendant by his evidence in support of the chain of title set out in his answer, to wit, his election at recall election, fairly sustained such burden.

It is undisputed that the vote cast for superior judge in Pinal county in 1922 election was 2,197, and that the recall petition contained 932 names, an excess of 382 over the 25 per centum required by the law; that petition was filed with the clerk of the board of supervisors, and that he immediately notified plaintiff thereof and of his right to have his defense on ballot to be used at the election; that the board considered the petition and ordered the recall election; that notice of the election was published in four newspapers of general circulation in Pinal county for a period exceeding 10 days prior to election; that persons on the register of Pinal county for the year 1922 and persons who were registered during the registration period beginning the first Monday of May, 1924, were treated as voters and permitted to vote at such election, and that at

such election defendant, Green, received the highest number of votes.

But the plaintiff now says the recall petition was defective in not having on or attached to each sheet the grounds of recall; and because the grounds assigned for recall were merely scandalous and impertinent, not amounting to a charge of misconduct in office; and because the signers failed to add to their signatures their places of residence, giving the street and number, if any; and because signers were not on the great register of Pinal county for the year 1924.

As to the first objection, it is clearly without merit. More sheets than one are contemplated, and to each sheet the circulator thereof must make affidavit; but only once is it required to write on the recall petition the grounds therefor. This was done in this case. The general statement of the grounds of demand for plaintiff's recall was as follows:

"He is not worthy of belief.

"He has a violent and ungovernable temper.

"He suffers from hallucinations.

"He violates the law by presiding in court with a pistol in his hip pocket.

"He has required certain of his employees to take a solemn oath that they will refrain from speaking to certain county officers.

"He is incompetent and inefficient.

"He has stated from the bench that he has the power to open court anywhere in Pinal county and fine people for contempt.

"He has opened court for the sole purpose of calling in county officials and publicly and openly abusing them, with (without) excuse or provocation."

Neither the statute nor the Constitution requires that any specific misconduct in office should be charged against the person sought to be recalled. The proceeding is not a judicial one but political in its nature, and the issue is of the latter character. Clearly, under our Constitution and the Recall Law

it is not necessary that the officer should have been guilty of misfeasance or malfeasance in his office. The grounds or reasons assigned in the petition for the recall may be very general in their nature and character. It was the evident purpose to permit the electorate to get rid of an obnoxious and unsatisfactory officer with whom, for any or no reason whatever for that matter, they may have become displeased. *Conn* v. *City of Richmond,* 17 Cal. App. 705, 121 Pac. 714, 719; *Dunham* v. *Ardery,* 43 Okl. 619, Ann. Cas. 1916A, 1148, L. R. A. 1915B, 233, 143 Pac. 331; *State* v. *Harris,* 74 Or. 573, Ann. Cas. 1916A, 1156, and note at pages 1161–1163, 144 Pac. 109. The grounds assigned by petitioners are of a very serious nature.

The next objection is that the signers to the petition did not give their place of residence, street, and number, if any. Both the Constitution and the statute require that this be done. However, the defendant asserts that there are no cities or towns in Pinal county in which the residences are numbered. It is conceded, though, that the towns of Florence, Casa Grande, Ray and Superior, or at least the first two, have streets, and that these streets are named. The purpose of requiring the street and number of the signers of petition to be given was for the convenience of the officers whose duty it was to pass upon the qualification of such signers by comparing the petition with the county's registration of voters. As was said in *Osborn* v. *Board of Supervisors,* 27 Cal. App. 88, 148 Pac. 971 (quoted in *Chester* v. *Hall,* 55 Cal. App. 611, 618, 204 Pac. 237.

"The requirement as to 'residence' is undoubtedly for the convenience and aid of the clerk in finding the names in the great register. While the petition might have been more specific in this respect it was apparently sufficient for the clerk's information and the objection goes to a mere irregularity that could and did result in no prejudice."

The petition with reference to the residence of the signers might have been more specific and definite, but, in the absence of a showing that the signers thereof lived in towns with streets and residences named and numbered, we think the objection is untenable, especially when no objection was made thereto until after the election.

It is next objected that the petition was insufficient because the signers thereof were not shown to be on the great register for the year 1924. Without undertaking to say at this place who were qualified electors of Pinal county at the time the petition was circulated and signed, and therefore competent to sign said petition, it may not be amiss to suggest that, although the plaintiff was notified of the steps the people of Pinal county were taking to recall him, he paid no attention whatever to the proceeding. If the petition was defective, as he now contends, either in matter of form or substance, he must have been aware of it before the election was called. He had the right to appear before the board of supervisors before any action was taken upon the petition and interpose any and all the objections he now makes to the petition or action of the board. And, if the foundational proceedings were so defective as not to confer jurisdiction upon the board of supervisors, he might have called to his aid the processes of the law to prevent what he now claims was without legal sanction. .

We think there can be no question but that there was a mandatory duty on the part of the board of supervisors, when the petition for the recall of plaintiff was filed with it, containing signatures of the necessary percentage, to pass upon the sufficiency of such petition. The board could not know from the face of the petition whether all the signatures thereon were genuine, nor could they know from an inspec-

tion of the petition that some of the signatures were
fraudulent, if there were such; but they could prop-
erly presume *prima facie* that all the signatures
thereon were genuine and made in good faith, and
that presumption would continue until positive proof
to the contrary was seasonably made to appear.
Neither the statute nor the Constitution provides
what proof or evidence the board of supervisors
shall take before passing upon the recall petition.  In
*State* v. *Hall* (N. D.), 186 N. W. 284, the court was
passing upon a recall provision of the Constitution
of that state wherein the duty of calling or ordering
an election was imposed upon the officer with whom
petition was filed, but no rule was given to test the
validity or sufficiency of the petition, and in such
circumstances it was held that the sufficiency of the
petition must be determined from an inspection of
the same, and we think that is the general rule under
like provisions.  The board concluded from an ex-
amination of the recall petition, apparently regular
in form and sufficient in substance, and from a com-
parison of the knowledge that each of them possessed
of the signers thereto, and from the county recorder's
examination of the registration books, that the peti-
tion was signed by the necessary number of qualified
electors.  They used the best and most available in-
formation at hand, and that seems to meet the re-
quirements. *State* v. *Carter*, 257 Mo. 52, 165 S. W.
773; *Wolfskill* v. *City Council*, 178 Cal. 610, 174 Pac.
45; *Bine* v. *Jackson*, 266 Mo. 228, 181 S. W. 36.

In *State* v. *Hall, supra,* the action was brought
after the recall election had been held to restrain
the canvassing board from canvassing returns, upon
the grounds of the insufficiency of the recall petition.
And, while each of the five judges of that court
wrote an opinion expressing his views, they all

28 Ariz.—5

agreed that upon the officer with whom the recall petition was filed (no specific provision being made as to how the sufficiency of the petition was to be ascertained) was imposed the duty, at least in the first place, to determine whether the petition was signed by the requisite number of electors; and they also agreed in the view that the objections to the petition came too late after election. Mr. Justice BIRDZELL, in his concurring opinion, very well states the position of the court in the following language:

"The only question for consideration here is whether or not the petition alleges grounds for interference with the contemplated action of the canvassing board. I am clearly of the opinion that it does not. It is unnecessary to go further into the consideration of article 33 of the amendments to the Constitution than to determine whether or not a duty is imposed upon the secretary of state, in the first instance, to ascertain the sufficiency of petitions filed in his office and to act upon them in accordance with his determination. Clearly, the sufficiency of the recall petition must be determined in the first instance by the officer with whom it is filed, and when so determined, a mandatory duty is imposed to call an election. *State* v. *Langlie,* 5 N. D. 594, 32 L. R. A. 723, 67 N. W. 958. If the determination is adverse, he should refuse to call it. In this instance the determination was made and the resulting duty performed more than 40 days before the election complained of was held. It is familiar law that voters, no less than parties plaintiff in other capacities, may be estopped to assert their legal rights, if any they have, and that such estoppel arises where they participate in an election, thereby seeking to influence its result. It is not alleged that the election did not result in a fair expression of the will of the voters. The facts which preclude the plaintiffs here appear on the face of the petition. Extraordinary relief should therefore be withheld. In my view of the case it is unnecessary to consider the qualifications of a signer to a recall petition. Nor are we required

to determine whether the petition herein sufficiently alleges a cause of action, if it had been presented prior to the election. It was not so presented. According to my view it does not state facts warranting the relief sought, and I join in denying it."

In the same case Mr. Justice BRONSON used this language:

" . . . That, while a sufficient petition was undoubtedly necessary, yet the question lay deeper than that; that the pregnant inquiry was what body was to settle the matter finally; that after an election had been held this court was impelled to the conclusion that the decision of the board was final."

In *Allen* v. *State,* 14 Ariz. 458, 44 L. R. A. (N. S.) 468, 130 Pac. 1114, after a referendum election upon the state game law (chapter 82, Laws Special Session, 1st Leg.), the validity of such law was called in question because it was not given the publicity provided by the Constitution and the laws, and was not submitted in a proper or legal election. We there refused to consider the objections, and quoted extensively from an opinion by Mr. Justice BREWER of the Kansas Supreme Court, who later became a member of the Supreme Court of the United States. The learned judge in that case (*Prohibitory Amendment Cases,* 24 Kan. 700), said:

"After the contest was ended and the election over, the claim is for the first time made that after all there was nothing in fact before the people; that this whole canvass, excitement and struggle was simply a stupendous farce, meaning nothing, accomplishing nothing. This is a government of the people, by the people, and for the people. This court has again and again recognized the doctrine lying at the foundation of popular governments that in elections the will of the majority controls, and that mere irregularities or informalities in the conduct of an election are impotent to thwart the expressed will of such majority."

Under the rule announced in these cases a duty is imposed upon one who would question the correctness or regularity of an election to act promptly, and, if he has information before the election of any defects in the proceedings, he must take steps to prevent the election and the consequent expense or to correct known errors, or he will be regarded as having waived them.

This leaves three questions raised by plaintiff, going to the validity of the election, to be disposed of. The first one is that candidate Richardson and defendant, Green, did not file with the clerk of the board of supervisors nomination petitions, and that therefore their names should not have been placed on the ballot. Paragraph 3349 of the Civil Code designates what a candidate must do in order to get on the ticket at a recall election, and it seems that both these parties complied with such statute. It is therein said that a candidate must file his nomination paper signed by not less than 5 per centum of the qualified electors of the electoral district from which the officer sought to be recalled was elected. The form of the nomination paper is given. As we understand it, this form was used. Plaintiff's contention evidently is based upon a provision of the Primary Law. Under the Primary Law the candidate must not only file a "nomination petition," which is the paper signed by the necessary percentage of the qualified electors, but he must also file a nomination paper. Paragraphs 3012, 3013. Under the primary statute the nomination paper, that is, the paper signed by the candidate announcing his candidacy, must be filed not more than 60 nor less than 20 days prior to the election. Aside from the confusion of the name of these papers in these statutes it would be of course impossible for a candidate at a recall election to comply with the

Primary Law and file his nomination paper in time to get his name on ballot, since the recall election must be held not less than 20 nor more than 30 days after it is ordered. Evidently the legislature intended that the nomination paper mentioned in paragraph 3349 was all that the candidate was required to file in order to be eligible to go on the ballot at a recall election.

The second contention is that the ballot should have been so formed as to permit each voter to vote either for or against the recall of plaintiff as a separate issue, and also to express his choice of candidates for the office, and, the ballot used in election not extending an opportunity to vote on his recall as an independent issue, he was deprived of a constitutional right. The form of ballot adopted and used is the one prescribed by paragraph 3348 of the Civil Code. This ballot did not formally present to the voter as separate propositions (1) whether the plaintiff should be recalled, and (2) who should be his successor, as plaintiff contends it should. This contention is based upon a decision of the Supreme Court of Oregon (*State* v. *Barbur,* 73 Or. 10, 144 Pac. 126), construing the recall provisions of the Oregon Constitution; and, if our Constitution and that of Oregon were alike, the case would be authority in support of plaintiff's contention. Our Constitution has the following language which is not in the Constitution of Oregon:

"Unless the incumbent receive the highest number of votes, he shall be deemed to be removed from office, upon qualification of his successor. In the event that his successor shall not qualify within five days after the result of said election shall have been declared, the said office shall be vacant, and may be filled as provided by law." Article 8, § 4.

We think the above-quoted language avoids the anomalous and paradoxical situation that prevails

in Oregon. As the election must be held in Oregon under the construction given to the organic law of that state, the incumbent may actually be recalled and yet, if he receive the highest number of votes, defeat the recall. As the court says: "Thus the paradox may happen that the recall will in effect defeat itself."

We cannot read out of our constitutional provisions the necessity of submitting the separate propositions contended for, and, unless it was manifestly required, we would certainly feel like following the construction placed upon it by the legislature when it adopted at its first session after statehood the form of ballot it did. While our constitutional recall provisions are very similar to those of Oregon, and may have been largely taken from that state, the above-quoted language is not found in that instrument. The difference in the two instruments is great.

As we read ours, it is not possible for an incumbent to be recalled and at the same time retained in the office. He must receive the highest number of votes, else he is recalled. Unless he receive the highest number of votes, a vacancy automatically occurs when his successful opponent refuses to qualify. The paradox of being recalled and at the same time elected is not possible under our Constitution. The wisdom of the framers of our Constitution is at once apparent. It avoids the absurd situation that is possible under the Oregon Constitution.

The third point made by plaintiff is that those voting at the election, or enough of them to have affected the result, were not qualified electors; the contention under this head being that only those persons who had registered during the year 1924 were entitled to vote at the recall election. It is conceded, we think, that practically all of those vot-

ing at such election were either on the register of
voters for 1922 or that of 1924; and, while a few
persons might have voted who were not on the regis-
ters of such years, they were doubtless negligible,
since they are not given or estimated by the plaintiff
or the defendant. At all events, if all such were
deducted from defendant's vote, it would still leave
him the highest vote.

The recall must be by the "qualified electors."
Section 1, art. 8, Const. In order to secure the
purity of elections and to guard against abuse of the
elective franchise, registration laws are required to
be enacted. Section 12, art. 7, Const. Paragraph
2879, Civil Code, defines who shall be electors of the
state "and . . . entitled to register for the purpose
of voting at all elections which are now or may be
hereafter authorized by law." Paragraphs 2883
and 2884 provide that the registration period shall
be between the first Monday in May and the 15th
of October every even-numbered year, and make it
the duty of every elector to register between those
dates. The recall statutes, while leaving the recall
of an elective officer to the qualified electors, do not
undertake to provide for a special registration for
such election, nor do they specifically provide whether
the last preceding registration shall be used or the
current one, when the election happens during the
registration period. Plaintiff admits that, if the re-
call occurs prior to the first Monday in May of even
years, the last preceding registration would be the
proper one. Indeed, if it could not be used (and
registration be necessary to qualification), there
would be no one eligible to vote in case recall election
should fall on a date after the November general
election and before the first Monday of May in even
years, and for the same reason no recall petition
would be legal. The registration then does not die

and become *functus officio,* with the general and primary elections of the year it is made. It holds good "for the purpose of voting at all elections which are now or may be hereafter authorized by law," at least until the next succeeding registration period has expired, unless the legislature has otherwise directed.

Registration laws should be construed so as to uphold and sustain the citizen's right to vote. The exercise of this privilege should be encouraged and not discouraged. The legislature, having provided for the exercise of the recall against an elective executive, administrative, or judicial officer at any time after a six months' trial period in office, and a legislative officer after a five days' trial period in active legislation, will be presumed to have intended that all citizens whose qualifications entitled them to vote at such election would be secured in its exercise, and that no one would be disfranchised. If, however, such election should fall upon a date contemporaneous with the registration period, as the election here did, and the election officers are compelled to look exclusively to the next preceding registration for qualified electors, or exclusively to the register in the making, many voters, without any fault on their part, would be denied the vote. This would be especially true in the latter case. The registration begins the first Monday in May and ends October 15th. Any election called and held during that period, if the current registration is to be the only guide as to who is legally qualified to vote, would necessarily result in denying the franchise to some, the number depending upon the time of election in the registration period. To illustrate: It is shown by the records in this case that of the 932 signers of the recall petition only 182 had been registered between the first Monday of May and the twenty-sixth

day of May, the date of filing recall petition, and only 188 on June 4th, the date of ordering election. Suppose the election had been held on one of these dates. Very few of the voters of Pinal county, if the 1924 registration only be' used to guide the election officers, could have voted. We are of the opinion the legislature intended, not only that the last preceding register, but the one in the making, where the election occurs in the registration period, should be the guide as to who is a qualified elector and entitled to vote at recall elections. This construction accords with the language of the election laws, as also the spirit thereof. It cannot in any way impair the security of elections nor facilitate abuses of the elective franchise. It will permit persons not on the previous register, but who have since attained majority or met the statutory requirement as to residence, to register and vote; and it will also preserve the right of those on the register of the preceding registration period to participate in the election.

Plaintiff asks us to declare the recall provisions of our Constitution, as applied to the judiciary, unconstitutional as in conflict with the federal Constitution. He cites no authority, but argues that the innovation is not in harmony with the basic ideas of our institutions, tends to undermine the independence of the courts, and is contrary to public policy. All these questions pertain to the sovereign powers of the people in their political aspect, have been unalterably settled, and may not be changed except in the manner provided by the Constitution.

There were so many questions raised by the plaintiff that we have not thought it necessary to state and discuss all of them, but that does not mean we have overlooked or failed to consider them. Any question not expressly discussed we have thought covered by what we have said in consideration of other ques-

tions or unimportant to a correct disposition of the case.

We conclude that the election, including the recall petition and other proceedings leading up to the election, was in substantial compliance with the law; that those voting at such election were qualified voters; that of the candidates for the office of judge of the superior court of Pinal county defendant, E. L. Green, received the highest number of votes, and was duly elected to the office.

Under the common-law proceeding of *quo warranto* the court did not decide who was entitled to the office, but by our statute, paragraph 1599, the relief is extended so that the court is required to adjudge who is entitled to the office.

We accordingly hold that the defendant, E. L. Green, was, at the time of the institution of this proceeding, and is now, entitled to the office of judge of the superior court of Pinal county. Judgment should be entered accordingly, with costs to the defendant.

McALISTER, C. J., and LOCKWOOD, J., concur.