187 P.2d 656

RENCK v. SUPERIOR COURT OF MARICOPA COUNTY et al.

No. 5001.

Supreme Court of Arizona.

Dec. 1, 1947.

Hill, Robert, Hill & Price, of Phoenix, for petitioner.

H. S. McCluskey and L. H. Whitlow, both of Phoenix, and Ira Schneier, of Tucson, for respondents.

UDALL, Justice.

By original proceeding before this court, petitioner W. H. Renck sought a writ of prohibition to prevent the Superior Court of Maricopa County and the Honorable Edwin Beauchamp, one of the Judges thereof, from continuing to exercise jurisdiction over cause no. 56648 there pending. Respondents were given proper statutory notice of the application for the writ and they appeared and answered. Oral argument was granted.

A chronological recitation of the pertinent facts is as follows: On July 3, 1946, an initiative petition was timely filed with Dan Garvey, Secretary of State, for submission to the electors of the state at the next general election. The subject matter of the petition was a proposed constitutional amendment providing that no person shall be denied the opportunity to obtain or retain employment because of non-membership in a labor organization. On August 13, 1946, D. A. Baldwin and George Sebestyen, as qualified electors of Maricopa County, in behalf of themselves and many thousands of qualified electors similarly situated, filed suit in the Maricopa County Superior Court against Dan Garvey individually, and as Secretary of State, challenging the legal sufficiency of the initiative petition and contending, therefore, that the measure was not entitled to a place on the general election ballot. Specifically, irregularities and gross fraud were charged in the procurement of signatures on the petition. A temporary restraining order directed against the Secretary of State was neither requested nor granted. However, on August 28, 1946, plaintiffs obtained the appointment of a master to take testimony as to the petition's legal sufficiency. Relief was asked for in the alternative: (a) if the insufficiency of the petition could be judicially determined prior to the time when the matter must be certified for inclusion on the ballot, the Secretary of State should be permanently enjoined from certifying the measure to the Clerks of the Boards of Supervisors, or; (b) if such determination be impossible within the limits of time pre-

scribed by law, the court should retain jurisdiction to determine the sufficiency of the petition even though during the interim the amendment might be adopted by a majority of the electors. And, should this happen, and the petition then be found wanting, the election on that matter should be held to be null and void and the adopted measure held to be of no force or effect.

The Secretary of State evidently considered the petition consisting of the 1591 sheets bearing 31,618 signatures of purported electors prima facie sufficient (19,296 names were required), for on August 16, he certified the measure to the Clerks of the Boards of Supervisors for printing on the general election ballot. On November 25, the votes cast on this measure at the general election of November 5 were canvassed by the Secretary of State in the presence of the Governor and the Chief Justice of this court. On the same day, and in accordance with his constitutional and statutory duty, the Governor by proclamation recited that the amendment had been duly and regularly adopted, 61,875 votes having been cast in its favor as opposed to 49,557 cast against it, and was then, and as of that date, the law. The amendment now appears in the 1947 Session Laws of the Eighteenth Legislature at page 399.

At the hearings before the master appointed by the trial court, which started before the election and continued after it, approximately fifty percent of the signatures were checked. Petitioner Renck intervened in that suit and on March 12, 1947, filed a motion for summary judgment to dismiss plaintiffs' complaint upon the ground that there was no genuine issue as to any material fact and that the defendants and intervenor were entitled to such judgment as a matter of law. The Attorney General, appearing for defendant Dan Garvey both as an individual and as Secretary of State, joined in that motion. On May 5, the motion was denied and on May 16 application for writ of prohibition was filed with this court. In his appearance filed with us, the Attorney General states that the Secretary of State wholly approved of this application for writ of prohibition as though he were a party thereto. An alternative writ issued from this court on June 16.

By denying the motion for summary judgment the trial court in effect found that if the petition was ultimately found legally insufficient it had the power and duty to declare the amendment null and void even after the election, its adoption by the people, and the proclamation of the Governor that the amendment was a part of the Constitution. Since a denial of a motion for summary judgment is not an appealable order, and inasmuch as it is conceded that hearings before the master might well continue for another sixty days together with the attendant expense, petitioner claims that prohibition is the proper remedy to determine whether the trial court is attempting to do an idle thing by further

**324**

proceeding with the trial. This court agrees with petitioner's contention in this regard. He has no other speedy or adequate remedy and prohibition properly lies to prevent an inferior tribunal from exceeding its jurisdiction in a field not appropriate to it. Duncan v. Superior Court of Pinal County, 65 Ariz. 193, 177 P.2d 374.

■■ There is no doubt that in this jurisdiction any citizen has the right and power to question the legal sufficiency of an initiative petition before it has been submitted to a vote. Ahrens v. Kerby, 44 Ariz. 269, 44 Ariz. 337, 37 P.2d 375. And it is logically proper that such power exist for a citizen has no forum (as do the legislators, when assembled) in which he can check upon the propriety of the proceedings of his fellow citizens in presenting such petitions other than by his access to the courts. Such is consonant with the weight of authority. 59 C.J., Statutes, sec. 295; 28 Am.Jur. Initiative, etc., sec. 35. This court has construed that power of a citizen to question the legal sufficiency of such petitions to come within the confines of sec. 60-105, A. C.A.1939. Barth v. White, 40 Ariz. 548, 14 P.2d 743. The above cited section of our statute requires that should the Secretary of State refuse to accept and file an initiative petition, a citizen must apply to the superior court within ten days from such refusal for a writ of mandamus. No time limit is designated, however, in this section or anywhere else for applying to the court for an injunction to restrain or enjoin the Secretary of State from certifying or the Clerks of the Boards of Supervisors from printing on the official ballot an initiated measure the petition for which the citizen believes to be legally insufficient. And an examination of our records discloses that several of the reported cases where injunctive relief was granted and the measure kept off the ballot were not actually filed within the ten-day limit although that point was not there considered. Ahrens v. Kerby, supra; Kerby v. Griffin, 48 Ariz. 434, 62 P.2d 1131; Kerby v. Luhrs, 44 Ariz. 208, 36 P.2d 549, 94 A.L.R. 1502. Respondents here contend that: (1) It makes no difference, therefore, that they questioned the petition's sufficiency some forty days after it was filed, and further suggest that their power to do this arises not from the statute in question, but instead from the constitutionally created jurisdiction of our superior courts (art. 6, sec. 6, Constitution of the State of Arizona). (2) Neither, it is contended, are they foreclosed by the fact that the subject matter of the petition has since been placed upon the ballot, voted upon by the people and adopted. For this they rely upon Whitman v. Moore, 59 Ariz. 211, 125 P.2d 445. Our decision upon this second contention eliminates any necessity for a consideration of their first proposition.

[6] At the outset, we must not confuse the question as to whether the court has power to continue an investigation as to the legal sufficiency of an initiative petition

after an election has been had and the measure adopted, with the power of the court to declare acts repugnant to the Constitution void at any time it has a proper case before it. This latter proposition is so well recognized and is so important a part of the court's duty that no citation of authority it necessary. As a matter of fact the constitutionality of the very amendment here in question is now before us in another case in which respondents' present attorneys are of counsel.

Once, however, the subject matter of the petition has been placed upon the ballot and thence adopted at a regularly held election of the people, it is then too late to question the legal sufficiency of the petition. Allen v. State, 14 Ariz. 458, 130 P. 1114, 44 L.R.A.,N.S., 468, and cases therein cited.

"It has been frequently determined that if parties allow an election to proceed in violation of the law which prescribes the manner in which it shall be held, they may not, after the people have voted, then question the procedure. Allen v. State, 14 Ariz. 458, 130 P. 1114, 44 L.R.A.,N.S., 468; McLoughlin v. City of Prescott, 39 Ariz. 286, 6 P.2d 50; Abbey v. Green, 28 Ariz. 53, 235 P. 150; Prohibitory Amendment Cases, 24 Kan. 700." Kerby v. Griffin, supra [48 Ariz. 434, 62 P.2d 1135].

For the courts of this state to assume the jurisdiction to set aside and declare void an amendment to the constitution adopted by the people and so declared by the Governor would be an invasion and usurpation by the judiciary of the legislative functions of the people. In the Allen case, supra [14 Ariz. 458, 130 P. 1115,], this court said: "If objections had been made in the early stages of the process of submission for the reasons now assigned, the questions would have been subjects of judicial investigation and determination. * * * Timely appeal to the courts upon the questions now raised, if meritorious, would have settled the matter *before the election was had.* However, the measure was submitted to the votors * * *. They were invited to believe that the formalities of the law pertaining to the submission of the measure had been fully met. The expense of the election was incurred, and the electors, imbued with the conviction that they were performing one of the highest functions of citizenship, and not going through a mere hollow form, we may assume, investigated the question and went to the polls and voted thereon." (Emphasis supplied.)

The doctrine that the judiciary shall not take jurisdiction of and consider matters political in their nature is based upon art. 3 of the Constitution of the State of Arizona relating to the distribution of powers which provides as follows: "The powers of the government of the state of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and except as provided in this constitution, such departments shall be separ-

ate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."

This theory has been much discussed and frequently explained. Both our state and federal governments are constructed upon the principle of separation of powers into three equal and co-ordinate branches. For any one of these to police or supervise the operations of the others strikes at the very heart and core of the entire structure. Abuses within the reserved sphere of any of these branches of government may arise, but that fact does not give license to one of the other co-ordinate branches to correct. Correction comes from within that branch itself or from the people to whom all public officers are responsible for their acts.

"All political power is inherent in the people, and governments derive their just powers from the consent of the governed. This is not a mere metaphor, that sounds pleasing to the ear, nor is it a maxim that may not have a concrete application; but it is a vital principle, adhered to in the formation of the government of this state.

\*    \*    \*    \*    \*    \*

"It does not follow, from the power of the courts to declare statutes unconstitutional, that they can go behind authenticated and approved statutes for the purpose of inquiring whether those statutes were passed in the manner prescribed by the Constitution." Allen v. State, supra.

See also cases cited and discussed at length in Allen case, supra: Abbey v. Green, 28 Ariz. 53, 235 P. 150; State v. Osborn, 16 Ariz. 247, 143 P. 117; Cox v. Stultz Eagle Drug, 42 Ariz. 1, 21 P.2d 914; Barth v. White, supra; McLoughlin v. City of Prescott, 39 Ariz. 286, 6 P.2d 50; Kerby v. Griffin, supra.

■ In fairness to respondent's counsel and the trial court it must be emphasized that in Whitman v. Moore, supra, this court was faced with a very similar situation in which the legal sufficiency of an initiative petition was questioned before election. We there upheld the validity of the petition in an opinion issued after the measure had been voted upon and approved by a majority of the electors. And while it does not appear either as a headnote or a part of the law in that case, the court, in setting forth the facts, made the following recitation [59 Ariz. 211, 125 P.2d 449]:

"It was requested by plaintiff that a special master be appointed for the purpose of checking and investigating the sufficiency of these signatures, and the court issued an order appointing one, but declined to then enjoin the placing of the measure on the ballot pending the report of the master. The matter was brought before this court, and it was urged that it was impossible to check the petitions before the general election and that if the measure was placed upon the ballot and approved by the qualified electors, under the rule in Allen v.

State, 14 Ariz. 458, 130 P. 1114, 44 L.R.A., N.S., 468, notwithstanding that the petition was found to be insufficient, the case would be considered as moot for the reason that the electors had already approved the measure. We pointed out that the Allen case was based upon a situation where no attempt was made to question the sufficiency of the petitions before the election, and that since the present case was initiated as soon after the filing of the petitions as possible, we would not consider the question moot, even though it were not decided until after the election, and if it appeared that the measure had not been legally submitted, would hold that it had not become a part of the statutes, even though it had been approved by the voters at the election when it was submitted. At the election in November, 1940, the measure therefore appeared on the ballot and was approved by the electors by a very substantial majority."

We feel bound to here specifically disapprove and overrule that part, and only that part, of the Whitman case allowing such a modus operandi on the part of the courts, for the reasons hereinbefore explained, and, on this score, return to the sound position of the Allen case. Once the measure has been placed upon the ballot, voted upon and adopted by a majority of the electors, the matter becomes political and is not subject to further judicial inquiry as to the legal sufficiency of the petition originating it.

Respondents contend that as a practical matter it might well be impossible for a citizen to have his injunctive suit heard on its merits and determined between the time the petition is filed and the "dead line" date for printing the measure upon the general election ballot. The mere mechanics of checking the validity of so many signatures in the case before us might well require more than that amount of time even if the checking had been more promptly begun. Clearly the law contemplates priority for such suits. It is the duty of the court to facilitate these matters with all dispatch. Our statutes have even shortened the time for appeal in these cases and our records indicate that this court has always expeditiously determined such appeals. Assuming however a situation such as we have here where regardless of priorities given by the courts probably all signatures could not be fairly checked within the alloted time, what then is the citizen's remedy? Clearly the remedy is to use the four month period between the filing of the petition and the election to marshall evidence sufficient to make highly persuasive preliminary showing of the facts relied upon such as would justify a court of equity in issuing a restraining order to keep the measure off the ballot until the hearing had been completed. Such power of the trial court should, however, be used with great restraint and caution, and only when the preliminary showing of insufficiency is clear and convincing. The trial court, in

deciding whether to grant such order must keep in mind that the purpose of initiative petitions is partly administrative in nature, i. e. to make certain that the subject matter of the petition is of interest to a sufficiently large segment of the electorate such as would entitle the measure to a place on the ballot and justify the expense of printing and publicity required for submission of it to a vote of the people. The court must be aware always that in case of doubt as to the strength of such preliminary showing, there is less danger to the rights of the people in incurring this expense to the state than in delaying the electorate from promptly deciding whether they do or do not want the measure. The electors, it must be remembered, should be, and are, the final arbiters in either case. In the case before us, plaintiffs failed to request the trial court to enjoin the placing of the measure on the ballot until complete showing was made.

We are of the opinion that the superior court should have granted the motion for summary judgment as the matters under review by it became moot with the adoption of the measure by the people and its incorporation into the Constitution by the Governor's proclamation. This investigation must now yield to the election rather than the election to the investigation. We refuse to hold that the election relative to this proposed constitutional amendment was a nullity. The validity and effect of the amendment, however, is a separate question and remains to be later determined. A peremptory writ of prohibition should issue prohibiting the court and the judge thereof from proceeding further in cause no. 56648, and it is so ordered.

STANFORD, C. J., and LaPRADE, J., concur.