662 P.2d 136

SAVE OUR PUBLIC LANDS COALITION, and Barbara Van Cleve, Petitioners,

v.

The Honorable Elizabeth STOVER, Judge of the Superior Court of Maricopa County, Arizona, Respondent,

and

James W. HENRY, et al., Real Parties in Interest.

No. 16182–SA.

Supreme Court of Arizona, En Banc.

April 14, 1983.

Samuel P. Goddard, III, Phoenix, for petitioners.

Robert K. Corbin, Atty. Gen. by Rory C.H. Abate, Asst. Atty. Gen., Thomas E. Collins, Maricopa County Atty. by Dean Wolcott, Asst. Maricopa County Atty., Phoenix, for respondents.

HOLOHAN, Chief Justice.

We accepted jurisdiction of this petition for special action pursuant to Arizona Constitution, Article 6, § 5. On September 24, 1982, following the hearing on the petition, we granted the requested relief by ordering the Secretary of State to notify the Governor that a sufficient number of signatures had been filed to place Initiative Measure No. 2–I–82 on the ballot, and that the Secretary of State cause the Initiative Measure to be placed on the General Election Ballot in the manner provided by law. In addition, we noted that a formal written opinion would follow. This is that opinion.

Petitioners, Save Our Public Lands Coalition and Barbara Van Cleve (hereinafter petitioners), sought to have initiative measure No. 2–I–82 placed on the general election ballot in November, 1982. The initiative concerned the propriety of transferring over 13 million acres of federally owned land in Arizona to the State of Arizona. On July 1, 1982, petitioners filed approximately 64,000 signatures on petitions for this initiative with respondent, Rose Mofford, Secretary of State of the State of Arizona. The number of signatures of qualified electors required to place the initiative on the next general election ballot was 53,856.[1] The Secretary of State, as required by A.R.S. § 19–121.02(A),[2] selected by random sample five percent of the filed signatures which were then submitted to the various county recorders for verification. Several days later the Secretary of State issued a receipt stating there were insufficient signatures to qualify petitioners' initiative for the general election ballot.

After receiving the certifications of the random sample signatures from each county recorder, the Secretary of State must dispose of the petition in one of three ways pursuant to A.R.S. § 19–121.04. If the number of valid signatures projected from the random sample is at least 105% of the minimum required by the Constitution, the Secretary of State must direct the matter be placed on the ballot. If the number of valid signatures is less than 105% but greater than 95% of the minimum number required by the Constitution, the Secretary of State must direct the county recorders to verify every signature. If the number of valid signatures projected by the random sample is less than 95% of the minimum

1. Arizona Const. Art. 4, pt. 1 § 1(2) provides in part: "Under this [initiative] power ten per centum of the qualified electors shall have the right to propose any measure, and fifteen per centum shall have the right to propose any amendment to the Constitution."

2. A.R.S. § 19–121.02(A) provides in part: "Within fifteen days after issuing the temporary receipt, the secretary of state shall, at random, select five per cent of the signatures filed with each petition for verification of eligibility by the county recorder of the county in which the persons signing the petition claim to be qualified electors. The random sample of signatures to be verified shall be drawn in such a manner that every signature filed with the secretary of state has an equal chance of being included in the sample."

number required by the Constitution, the Secretary of State will not place the measure on the ballot but must return the petitions to the organization which submitted them.

Petitioners' verification rate originally fell below the 95% mark. At this point petitioners challenged the certification by the County Recorder of Maricopa County pursuant to A.R.S. § 19–121.03(B).[3] The respondent judge considered evidence presented by petitioners which rehabilitated many signatures. The trial judge concluded that more than 95% of the signatures from the random sample had been verified, consequently, petitioners were entitled pursuant to A.R.S. § 19–121.04 to have each signature on the petitions verified by the county recorders. At the hearing on September 10, 1982, respondent judge ordered the Secretary of State to have the county recorders verify that all the signers of the petition were qualified electors. This verification was to be completed by September 20, 1982.

On September 15, 1982 respondent county recorder moved for reconsideration of the September 10 order because it was impossible for the Maricopa County Recorder's office to complete the verification by September 20.

Over petitioners' objection, respondent judge then withdrew the order, and she ordered a second random survey to be completed. At a hearing on September 21, 1982, the Secretary of State announced the certification had been completed. Petitioners again demonstrated the certifications were in error. Respondent judge found the samples indicated at least 95% of the minimum number of signatures required.

However, the judge found there was not sufficient time to verify each signature on the petitions prior to the date when absentee ballots had to be printed (September 23 or 24). The court further held the petition-

er had the burden to verify more of the names on the random sample and the court could not direct that the initiative measure be placed on the ballot.

Petitioners then filed this action in the Supreme Court. We took jurisdiction because there was no equally plain, speedy and adequate remedy by appeal.

A presumption exists that petitions which have been circulated, signed and filed are valid. *Board of Supervisors v. Superior Court,* 103 Ariz. 502, 446 P.2d 231 (1968); *Whitman v. Moore,* 59 Ariz. 211, 125 P.2d 445 (1942); 42 Am.Jur.2d *Initiative and Referendum* § 54 (1969).

In *Whitman v. Moore,* supra, this court stated:

> [W]hen there is any doubt as to the requirements of the Constitution going only to the form and manner in which the power of an initiative should be exercised, every reasonable intendment is in favor of a liberal construction of those requirements and the effect of a failure to comply therewith, unless the Constitution expressly and explicitly makes any departure therefrom fatal.

59 Ariz. at 220, 125 P.2d at 451.

The *Whitman* court also observed that a deviation from the constitutional requirements, such as proper signature, address, date and verification by the circulator, does not make the signature void, but does destroy the presumption of validity. The respondent judge relied on this passage in *Whitman* and held petitioner had the burden of sustaining the signatures on the petition.

We believe this finding was in error. The random sample method utilized in our statutory scheme is the yardstick by which the Secretary of State can measure whether the number of qualified electors is too high to be questioned, too low to be considered, or in the gray area which necessitates veri-

---

**3.** A.R.S. § 19–121.03(B) provides: "Any citizen may challenge in the superior court the certification made by a county recorder pursuant to § 19–121.02 within ten days of the receipt thereof by the secretary of state. The action shall be advanced on the calendar and heard as a trial de novo and decided by the court as soon as possible. Either party may appeal to the supreme court within ten days after judgment."

fying each signature on the petition. When the sample indicates a 105% certification rate, it is presumed the petition contains the required number of signatures by qualified electors. Any party challenging the validity of the signatures would have the burden of proving their invalidity. If the sample indicates less than a 95% certification rate, it is presumed there is an insufficient number of signatures. The burden of proof is on those wishing to sustain the signatures. In the instant case, petitioners sustained this burden—twice—by demonstrating the county recorder's office had erred in its certification.

Once the petitioner's signature verification reaches the 95–105% range we believe the basic presumption of validity should attach. If the time pressures are such that the county recorders cannot verify every signature before the date the election ballots must reach the printers, all doubts as to validity should be resolved in favor of sustaining the signatures, and the initiative

should be placed on the ballot. Accordingly, we ordered the Secretary of State to cause petitioners' initiative measure No. 2–I–82 to be placed on the general election ballot.[4]

GORDON, V.C.J., FELDMAN, J., and WILLIAM E. EUBANK and ROBERT J. CORCORAN, Court of Appeals Judges, concur.

Note: Justice JACK D.H. HAYS and Justice JAMES DUKE CAMERON having not participated in the determination of this matter, The Honorable WILLIAM E. EUBANK and The Honorable ROBERT J. CORCORAN, Division One, Court of Appeals, were asked to sit in their stead.

4. The measure was placed on the November, 1982 general election ballot but was defeated by the electorate.