811 P.2d 12

John KROMKO, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, Honorable Alan S. Kamin, a Judge thereof, Respondents,

Glenn E. MILLER, Real Party in Interest.

Glenn E. MILLER, Plaintiff/Appellant,

v.

Jim SHUMWAY, Secretary of State of Arizona, and the Board of Supervisors of Maricopa County, Pima County, Pinal County, Apache County, Cochise County, La Paz County, Navajo County, Coconino County, Gila County, Yavapai County, Yuma County, Santa Cruz County, Graham County, Greenlee County, Mohave County, Arizona, Bodies Politic, Defendants/Appellees,

John KROMKO, Real Party in Interest.

No. CV–90–0349–SA/AP.

Supreme Court of Arizona,
En Banc.

May 9, 1991.

Yen Hobson Pilch & Ringler by Robert E. Yen, William R. Hobson, Adam P. Palmer, Phoenix, for petitioner John Kromko.

Low & Childers, P.C. by J. Michael Low, S. David Childers, Steven R. Henry and Jones, Skelton & Hochuli by William R. Jones, Brian W. LaCorte, Phoenix, for plaintiff/appellant Glenn E. Miller.

Robert K. Corbin, Atty. Gen. by John B. Shadegg, Chief Asst. Atty. Gen., Lisa T. Hauser, Asst. Atty. Gen., Phoenix, for Secretary of State Jim Shumway.

Richard M. Romley, Maricopa County Atty. by Dean M. Wolcott, Deputy County Atty., Phoenix, for Arizona Bodies Politic.

## OPINION

CORCORAN, Justice.

This case consolidates a petition for special action by petitioner John Kromko (Kromko) and a direct appeal by plaintiff/appellant Glenn E. Miller (Miller). Both matters result from Miller's suit to enjoin Secretary of State Jim Shumway and the county boards of supervisors from placing an initiative measure on the November 6, 1990, state general election ballot. We have jurisdiction of the special action pursuant to Ariz. Const. art. 6, § 5(4), and rule 1, Arizona Rules of Procedure for Special Actions. We assert jurisdiction of the direct appeal pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 19–122(C).

### Factual and Procedural History

On June 29, 1990, Kromko filed an initiative petition and supporting signature sheets with the Secretary of State to place Proposition 201 on the ballot for the state general election to be held on November 6, 1990.[1] Proposition 201, popularly known as the "Kromko Initiative," sought to authorize numerous purported reforms in the automobile insurance industry, including rate reductions and a governmental office to represent insurance consumers' interests.

Pursuant to A.R.S. § 19–121.02(A), the Secretary of State forwarded each circulator's affidavit and a random sample of 5% of the 179,257 signatures eligible for verification to the county recorders' offices for certification that the signatures were by qualified electors. The county recorders reported that 33.2813% of the random signatures were not from qualified electors and that an additional 4,572 signatures were obtained by unqualified circulators. After inserting these results into the formula specified in § 19–121.04(A), the Secretary of State deducted the required amount of signatures from the total number of

signatures obtained by Kromko, leaving 114,557 valid signatures in support of Proposition 201. On August 6, 1990, having already established the minimum number of 86,699 signatures required for the state general election, the Secretary of State certified Proposition 201 for the November 6, 1990 ballot.

On August 28, 1990, Miller filed a complaint in superior court pursuant to § 19–122(C), seeking an injunction ordering the Secretary of State to revoke his certification of Proposition 201 and prohibiting the boards of supervisors of 15 Arizona counties from printing Proposition 201 on the general election ballots. Kromko was named as the real party in interest. Miller's action challenged the sufficiency of elector signatures collected by Kromko, claiming, among other things, that 6,510 petition signature sheets with 87,966 signatures contained extraneous material in the form of "short titles" that were neither authorized by the Secretary of State nor part of the statutory form under § 19–121.

The majority of short titles, in one form or another, described Proposition 201 as a 20% rollback of automobile insurance rates. The titles, however, did not reference other suggested changes to the laws governing insurance rates and procedures, including: (1) the creation of a new state governmental office to monitor consumer insurance interests; (2) a lower burden of proof for punitive damages in tort actions; (3) a private right of action for a single violation of the Unfair Claims Settlement Practices Act; (4) a rate approval process for life, health, and commercial insurance rates; and (5) an insurance consumer protection fund and methods of funding. Miller contended that the extraneous rate reduction titles induced and misled portions of the electorate into providing signatures for Proposition 201. The Secretary of State,

---

1. The Arizona Legislature is not the sole reservoir of legislative authority in Arizona. The Arizona Constitution states that the people reserve the power not only to approve or reject any act passed by the legislature, but also to propose laws or constitutional amendments and to vote on such measures at the polls. Ariz.

Const. art. 4, pt. 1, § 1. We refer to the right to vote on existing legislation as the referendum power, Ariz. Const. art. 4, pt. 1, § 3, and we refer to the right to propose new legislation and to enact or reject it at general elections as the initiative power. Ariz. Const. art. 4, pt. 1, § 2.

consequently, should not have considered signature sheets bearing titles exclusively devoted to rollback language in determining the number of valid signatures submitted by Kromko.

On September 7, 1990, Kromko filed a Motion to Dismiss or Alternatively Motion for Summary Judgment. Kromko argued that Miller's complaint was time barred under § 19–121.03(B), which requires any challenge to "the certification made by a county recorder pursuant to § 19–121.02 [to be filed] within ten days of the receipt thereof by the secretary of state." Miller initiated his suit in superior court 29 days after the Secretary of State received the last of the county recorders' certifications. Kromko also contended that § 19–122(C) must be read in conjunction with § 19–122(A), which contains a 10–day limitations period for all actions by citizens seeking to compel the Secretary of State to file a petition or proposal.

The trial judge commenced a show cause hearing on September 10, 1990, at which time he denied Kromko's motion. The trial judge set forth numerous reasons for viewing Miller's action as timely, including the plain language of § 19–122(C), which makes no mention of a 10–day limitations period for challenges to the legal sufficiency of petitions filed with the Secretary of State. He also noted that cases interpreting Title 19 are similarly silent as to a 10–day limitations period for petition challenges under § 19–122(C).

On September 11, 1990, Kromko filed in this court a Petition for Special Action and Application for Interlocutory Stay of Proceedings challenging the trial court's timeliness ruling. At a stay hearing the same day, the Vice Chief Justice denied Kromko's application for stay and scheduled oral argument on September 19, 1990. The order also indicated that any appeals from the trial court's ultimate decision would be heard during the September 19 special action hearing.

Proceedings in the trial court resumed on September 12, 1990, and continued the next day to consider a Verified First Amended Complaint filed by Miller. On September 14, 1990, the parties gave closing arguments, and the trial judge issued his Findings of Fact and Conclusions of Law denying Miller's application for preliminary injunction and dismissing Miller's amended complaint with prejudice. Miller appealed to this court on September 17, 1990, prompting a cross-appeal by Kromko. Kromko's special action and Miller's appeal are joined in the same cause number.

Following oral argument on the special action and both parties' appeals, we entered an order on September 20, 1990, affirming the judgment of the trial court and, in effect, denying the relief requested in Kromko's Petition for Special Action. Although Proposition 201 appeared on the state general election ballot, it was rejected by the voters on November 6, 1990. We indicated in our September 20 order that a formal, written opinion would follow. This is that opinion.

### Issues

Two issues are presented for our review:

1. Was Miller required to challenge the legal sufficiency of Proposition 201, pursuant to A.R.S. § 19–122(C), within the 10–day periods specified in § 19–121.03(B) and § 19–122(A)?

2. If not, did the signature sheets bearing extraneous insurance rollback titles render Kromko's petition in support of Proposition 201 legally insufficient, as contemplated by A.R.S. § 19–122(C)?

Based upon our review of the applicable statutes and cases, we do not believe that § 19–122(C) challenges are controlled by the 10–day filing periods governing other Title 19 actions. Because we also refuse to impose a similar limitations period by construction, we view Miller's action as timely. Further, absent legislative guidelines regarding the placement of extraneous material on a petition circulated for signatures, we cannot find fault with Kromko's signature sheets bearing short titles. Nor can we criticize, at least in this case, the practice of singling out insurance rollback language at the expense of other important aspects of Proposition 201. For these reasons, we find Kromko's petition to be legal-

ly sufficient for the purposes of certifying and printing Proposition 201 on the official ballot for the November 1990 general election.

## Discussion

### 1. Timeliness

■ Title 19 of the Arizona Revised Statutes authorizes citizen suits to challenge the legal sufficiency of proposed initiative measures. Section 19–122(C) states:

> Notwithstanding § 19–121.04, if any petition filed is not legally sufficient, the court may, in an action brought by any citizen, enjoin the secretary or other officers from certifying or printing on the official ballot for the ensuing election the amendment or measure proposed or referred. The actions shall be advanced on the calendar and heard and decided by the court as soon as possible. Either party may appeal to the supreme court within ten days after judgment.

In *Renck v. Superior Court,* this court recognized that no time limit is designated in what is now § 19–122(C) or anywhere else for applying to the superior court "for an injunction to restrain or enjoin the Secretary of State from certifying or the Clerks of the Boards of Supervisors from printing on the official ballot an initiated measure the petition for which the citizen believes to be legally insufficient." 66 Ariz. 320, 324, 187 P.2d 656, 659 (1947). *Renck,* however, was decided solely upon mootness grounds, *see id.,* and this court has not subsequently determined whether a particular limitations period applies to the filing of an initiative challenge under § 19–122(C).

Kromko believes that the trial court erred in viewing Miller's action as timely, arguing that sufficiency challenges under § 19–122(C) are subject to a 10–day limitations period. Kromko cites no language from § 19–122(C) in support of his position, but instead relies heavily upon our decision in *Pointe Resorts, Inc. v. Culbertson,* 158 Ariz. 137, 761 P.2d 1041 (1988). *Pointe Resorts* held that § 19–121.03(B), which im-

poses a 10–day filing period for challenges to the county recorder's certification pursuant to § 19–121.02, applies to referendum issues at the municipal level. *Id.* at 143–44, 761 P.2d at 1047–48. Consequently, challenges to a city clerk's certification of insufficiency must be filed within 10 days of its issuance. To hold otherwise, we believed, would be nonsensical, because if § 19–121.03(B) is not applied, no machinery exists by which the courts could review the clerk's actions. *Id.* We also stated that "A.R.S. § 19–121.03(B) parallels provisions in the rest of Title 19 by providing strict and consistent ten-day time limits for challenges to petition matters." *Id.* at 144, 761 P.2d at 1048.

Unlike Kromko, we do not interpret *Pointe Resorts* as imposing a blanket 10–day limitations period on *all* actions authorized by Title 19. *Pointe Resorts* simply instructed that other statutes, besides § 19–121.03(B), restrict the filing period for certain election challenges to 10 days.[2] We mentioned § 19–122(C) in *Pointe Resorts* only to note that challengers must appeal trial court decisions regarding the legal sufficiency of a filed petition within 10 days of judgment. We did not suggest that a 10–day restraint applies to the initial filing of a legal sufficiency challenge pursuant to § 19–122(C).

Nor do we believe the inclusion of 10–day filing periods in other Title 19 statutes, such as § 19–121.03(B) or § 19–122(A), evidences a legislative intent to impose a similar limitations period in § 19–122(C). Section 19–121.03(B), for example, grants any citizen the right to "challenge in the superior court the certification made by a county recorder pursuant to § 19–121.02 within ten days of the receipt thereof by the secretary of state." The county recorder's certification required under § 19–121.02 verifies circulator eligibility and discloses the number of unqualified signatories found in the random sample of petition signature sheets.

Section 19–122(C), in contrast, permits any citizen to explore beyond the county

---

**2.** Other statutes cited by the court in *Pointe Resorts* include A.R.S. §§ 19–121.03(A), –208.-04(A) and (B). 158 Ariz. at 144 n. 1, 761 P.2d at 1048 n. 1.

recorder's certification and question the overall legal sufficiency of an initiative petition. The elector status of each signatory and circulator is only one of many facets of the court's inquiry into whether a petition is legally sufficient under § 19–122(C). As this court long ago explained,

> the words "legally sufficient" ... mean that the petition shall conform with the requirements of the law as to *form* and signature. It is not a legal petition if not *regular in form*, and does not contain the signatures of legal voters as required. Of course, this requires that the petition shall be *genuine*. If it is *fraudulent* or if the signatures were *forged*, it is not legally sufficient.

*State v. Osborn*, 16 Ariz. 247, 250, 143 P. 117, 118 (1914) (emphasis added) (defining the term "legally sufficient" as used in ¶ 3327 of the 1913 Civil Code, an early predecessor of § 19–122(C)).

So understood, § 19–121.03(B) certification challenges and § 19–122(C) sufficiency challenges represent two distinct causes of action, and absent plain statutory language to the contrary, we see no reason why the 10–day limitations period imposed on the former cause of action should apply to the latter. In fact, we believe it likely, as the trial judge noted, that the legislature excluded sufficiency challenges from the application of a 10–day limitations period for an important reason: fraudulent conduct in connection with the circulation or signing of a petition may be very difficult for even state officials to detect, and lay citizens, therefore, should not be restricted by a 10–day filing period when attempting to keep the circulation process free from fraud.

The legislature originally codified § 19–122 as a single paragraph void of subsections.[3] In fact, the clauses that are now subsecs. (A) and (C) were once linked together, separated only by a semicolon.[4] For this reason, Kromko believes § 19–122 contemplates only one situation—an action to compel the Secretary of State to file a petition or transfer facsimiles of signature sheets for verification after his refusal to do so—and that once the secretary is compelled to file, citizens would have 10 days to challenge the legal sufficiency of the filed petition.

However, the more correct view is that § 19–122, in its original and subsequent forms, including the present, provides citizens two different types of relief in election matters: (1) under subsec. (A), an action compelling the Secretary of State to accept and file an initiative petition or transfer facsimiles of signature sheets for verification in the event the secretary *refuses* to do so, and (2) under subsec. (C), an injunction enjoining the Secretary of State from printing or certifying a petition he *initially accepted and filed*. To interpret § 19–122 otherwise would deprive citizens, like Miller, the means and opportunity of challenging the legal sufficiency of initiatives already accepted and filed by the Secretary of State. This would run counter to the general spirit of the initiative and referendum, which recognizes "no reason why the interest of a citizen may not be as great in preventing an initiative petition not legally sufficient from being submitted to a vote as in compelling that one legally sufficient should be so submitted." *Barth v. White*, 40 Ariz. 548, 553, 14 P.2d 743, 745 (1932).

Surely the legislature did not intend to condition the citizenry's right to challenge the legal sufficiency of an initiative upon the preliminary actions of the Secretary of State. We believe, therefore, that the legal

---

**3.** *See* Ariz.Sess.Laws 1912, 1st S.S., Ch. 71, § 3. The legislature added subsections to the statute in its 1955 code revision, and inserted a new subsec. (B) between what are now subsecs. (A) and (C) in 1977. *See* Historical and Statutory Notes to A.R.S. § 19–122.

**4.** The 1928 version of the present statute read,

> If the court find [sic] that such petition is legally sufficient, the secretary shall then file it, with a certified copy of the judgment attached thereto, as of the date on which it was originally offered for filing in his office; if any petition filed is not legally sufficient, the court may enjoin the secretary or other officers from certifying or printing on the official ballot for the ensuing election the measure proposed or referred.

Rev.Code 1928 § 1744.

sufficiency of an initiative may be challenged by a citizen regardless of whether the Secretary of State initially refuses to accept and file the petition or transfer facsimile sheets for signature verification. *See Renck*, 66 Ariz. at 322, 187 P.2d at 657 (plaintiffs challenged the legal sufficiency of a petition originally accepted and filed by the Secretary of State). *Accord Tilson v. Mofford*, 153 Ariz. 468, 470, 737 P.2d 1367, 1369 (1987); *Iman v. Bolin*, 98 Ariz. 358, 362, 404 P.2d 705, 708 (1965).

Having determined that § 19–122 contemplates two separate causes of action, we refuse to hold that the 10–day limitations period contained in subsec. (A) applies to subsec. (C). Had the legislature intended to impose an express limitations period in subsec. (C), it easily could have done so. Section 19–122 has been amended on numerous occasions, including at least 4 instances since our decision in *Renck*, without mention of a limitations period on legal sufficiency challenges under what is now subsec. (C). *See* Historical and Statutory Notes to § 19–122. We must consider such an omission deliberate, especially when § 19–122(C) also contains an express 10–day filing period for *appeals* from the decisions of the trial court.

■ We do not wish to imply, however, that challenges pursuant to § 19–122(C) may be filed at any time. An action to enjoin placing an initiative or referendum proposal on the ballot is equitable in nature, *see Kerby v. Griffin*, 48 Ariz. 434, 444, 62 P.2d 1131, 1135 (1936), and therefore may be subject to equitable defenses such as laches. Moreover, disputes concerning election and petition matters must be initiated and heard in time to prepare the ballots for absentee voting to avoid rendering an action moot. We have long maintained that "if parties allow an election to proceed in violation of the law which prescribes the manner in which it shall be held, they may not, after the people have voted, then question the procedure." *Kerby*, 48 Ariz. at 444, 62 P.2d at 1135; *see also Tilson*, 153 Ariz. at 470, 737 P.2d at 1369 (election procedures cannot be questioned after the people vote); *Rapier*

*v. Superior Court*, 97 Ariz. 153, 155–56, 398 P.2d 112, 113 (1964) (generally, contests of elections are moot if not determined sufficiently before absentee voting begins). Here, Miller filed his sufficiency challenge on August 28, 1990—more than a month and a half before absentee voting began in the November 1990 election. We conclude, therefore, that Miller's complaint was timely filed.

## 2. Legal Sufficiency

■ Because Miller's action was timely, we must consider the legality of petition signature sheets entitled with extraneous insurance rollback slogans. Before doing so, we mention the scope of our jurisdiction to review proposed initiatives before an election. Although courts have the duty "of ensuring that the constitutional and statutory provisions protecting the electoral process (i.e., the manner in which an election is held) are not violated," they "are powerless to predetermine the validity of the substance of an initiated measure." *Tilson*, 153 Ariz. at 470, 737 P.2d at 1369. Thus, our authority to intervene and enjoin an initiative measure is limited to those instances in which a petition is legally insufficient in form, prescribed procedure, or the number of qualified electors. *Id.* (citing *Iman*, 98 Ariz. at 365, 404 P.2d at 709).

In this case, Miller believes that the challenged petition is legally insufficient in two respects: (1) Arizona election statutes do not authorize the use of extraneous short titles on petition signature sheets; and (2) the insurance rollback titles fraudulently induced voters into signing a petition they otherwise would have ignored. We do not agree.

### (a) *Surplusage*

■ When interpreting constitutional and statutory provisions relating to election matters, courts must exercise restraint before imposing unreasonable restrictions on the people's legislative authority, which "is as great as the power of the legislature to legislate." *Osborn*, 16 Ariz. at 250, 143 P. at 118, *cited in Iman*, 98 Ariz. at 364, 404 P.2d at 709. Consequently, requirements

as to the form and manner in which citizens exercise their power of initiative should be liberally construed. In *Whitman v. Moore,* this court stated:

> [W]hen there is any doubt as to the requirements of the Constitution going only to the form and manner in which the power of an initiative should be exercised, every reasonable intendment is in favor of a liberal construction of those requirements and the effect of a failure to comply therewith, unless the Constitution expressly and explicitly makes any departure therefrom fatal.

59 Ariz. 211, 220, 125 P.2d 445, 451 (1942), *overruled on other grounds, Renck,* 66 Ariz. at 327, 187 P.2d at 660–61; *Brousseau v. Fitzgerald,* 138 Ariz. 453, 456, 675 P.2d 713, 716 (1984).[5]

■■■■ The term "legal sufficiency," as used in § 19–122(C), requires substantial, not necessarily technical, compliance with the requirements of the law. *Osborn,* 16 Ariz. at 250, 143 P. at 118 (quoting *State v. Olcott,* 62 Or. 277, 279, 125 P. 303, 304 (1912)). Once circulated, signed, and filed, petitions are presumed valid. *Save Our Pub. Lands Coalition v. Stover,* 135 Ariz. 461, 463, 662 P.2d 136, 138 (1983). Courts may remove a measure from the ballot only "when it appears affirmatively the constitutional and statutory rules in regard to the manner in which initiative ... petitions should be submitted have been so far violated that there has been no substantial compliance therewith...." *Iman,* 98 Ariz. at 366, 404 P.2d at 710 (citing *Kerby,* 48 Ariz. at 445, 62 P.2d at 1136).

■■■■ We believe the petition filed by Kromko substantially complies with Arizona election laws. Pursuant to § 19–121(A), every sheet for signatures must meet 3 requirements:

1. Be in the form prescribed by law.

2. Have printed in its lower right hand corner, on each side of such sheet, the number assigned to the petition by the secretary of state.

3. Be attached to a full and correct copy of the title and text of the measure, or amendment to the constitution, proposed or referred by the petition, which shall be printed on pages fourteen inches in width by eight and one-half inches in length, with a margin of at least one inch at the top and bottom of each page.

Both parties agree that the challenged signature sheets meet requirements 2 and 3. After reviewing the record, we believe the sheets also contain the information necessary to comply with the statutory form contemplated by requirement 1, which is set forth in § 19–102. Pursuant to § 19–102, all petition sheets circulated for signature must contain a certain title and specific language in the text, and otherwise "be *substantially* in the form prescribed in § 19–101" (emphasis added). Section 19–101 requires: (1) a warning that any person who fraudulently signs a petition is guilty of a class 1 misdemeanor; (2) space for the name of a citizen signing the form, as well as his residential address and date of signature; (3) 15 separately numbered lines for signatures; and (4) the circulator's sworn statement, acknowledged by a notary, attesting to the validity of the signatures. Aside from the extraneous short titles, the petition signature sheets attacked by Miller conform precisely with the criteria specified in § 19–102.

To reject Kromko's petition simply because of the short titles would run counter to the policy favoring liberal construction of petition requirements stated in *Whitman v. Moore.* "Necessarily even with the best safeguards that can be thrown around the circulation of petitions, where such a large number of names are required, inaccuracies and *technical departure* from pre-

---

5. Ariz.Sess.Laws 1989, Ch. 10, § 1 also provides:
   The right of initiative and referendum shall be broadly construed. If there is doubt about requirements of ordinances, charters, statutes or the constitution concerning only the form and manner in which the power of an initiative or referendum should be exercised, these requirements shall be broadly construed, and

the effect of a failure to comply with these requirements shall not destroy the presumption of validity of citizens' signatures, petitions or the initiated or referred measure, unless the ordinance, charter, statute or constitution expressly and explicitly makes any fatal [sic] departure from the terms of the law.

scribed forms are certain to occur every time a petition is circulated." *Whitman,* 59 Ariz. at 221, 125 P.2d at 451 (quoting *Re Initiative Petition No. 23,* 35 Okla. 49, 127 P. 862 (1912)) (emphasis added). "If *technical restrictive constructions* are placed upon the laws governing the initiation and submission of these measures, the purpose and policy of the people in establishing the same will be entirely defeated...." *Id.* (emphasis added).

As the trial judge noted, this is not a situation in which the legislature has given clear instructions to circulators with respect to descriptive material that may be included on petitions. Indeed, Arizona election statutes neither authorize nor prohibit the inclusion of extraneous titles on petition signature sheets.[6] Absent constitutional or statutory language expressly and explicitly prohibiting such a practice, we cannot say Kromko's signature sheets bearing short titles are so defective as to invalidate the signatures obtained thereon.

### (b) *Fraud*

■ We do not read *Whitman,* however, as authorizing extraneous petition matters in *any* form. Permitting material not required by the constitution or statutes arguably opens "the process to misleading information and even to mudslinging and partisan tactics." *Haugland v. Meier,* 335 N.W.2d 809, 811 (N.D.1983); *Lips v. Meier,* 336 N.W.2d 346, 347 (N.D.1983). *See also Columbia River Salmon & Tuna Pack. Ass'n v. Appling,* 232 Or. 230, 233, 375 P.2d 71, 72 (1962) (encouraging petitioners to masquerade under misleading captions opens the initiative process to abuse). We agree, therefore, with the many cases Miller cited that criticize the use of short titles containing either untrue representations designed to defraud potential signatories, or highly inflammatory language calculated to incite partisan rage. *See, e.g., Boyd v. Jordan,* 1 Cal.2d 468, 472, 35 P.2d 533, 534 (1934) (short title made no reference whatsoever to a tax, even though the *sole*

purpose of the measure was to raise revenue for government); *Columbia River,* 232 Or. at 232, 375 P.2d at 72 (ballot title invited voters to restrict commercial fishing for *steelhead,* when in fact the measure would ban *all* fishing on the Columbia River). In our opinion, however, the short titles at issue in this case were drafted in a significantly different fashion.

Miller supports his argument to the contrary with the testimony of approximately 40 witnesses who claim to have been misled by titles referencing only the insurance rollback aspect of Proposition 201. Such testimony, Miller insists, destroyed the presumption of validity that attached to Kromko's petition once circulated, signed, and subsequently filed with the Secretary of State. *See Stover,* 135 Ariz. at 463, 662 P.2d at 138. The trial judge, however, discounted the testimony, concluding that Miller did not use any statistically valid method of sampling while locating and communicating with his witnesses.

We need not determine whether Miller met his burden in this case. Even if he did, the testimony of electors allegedly duped by short titles, without more, did not require the trial judge to invalidate the challenged petition, but placed upon Kromko the burden of showing that the petition was nevertheless valid. *See Whitman,* 59 Ariz. at 225, 125 P.2d at 453 (deviation from formal requirements did not render signature void, but destroyed the presumption of validity and placed upon the party seeking to sustain the signature a burden of producing additional evidence that the signer was qualified). We believe Kromko submitted sufficient evidence to overcome Miller's attack and to demonstrate validity. The record before the trial judge indicated that Kromko's petition substantially complied with election statutes mandating, in addition to sufficiency of petition form, the absence of fraud in the circulation process. That is all the law requires to reject a legal sufficiency challenge pursuant to

---

**6.** Extraneous short titles are not uncommon in Arizona. Kromko submitted sample petitions for at least 6 other proposed measures on the November 1990 ballot (victims' rights, state heritage fund, toxic waste control, school improvement, and two no fault insurance initiatives) that contained extraneous titles of some sort.

§ 19–122(C). *Osborn*, 16 Ariz. at 250, 143 P. at 118.

■ Our examination of the signature sheets confirms that Kromko's short titles are not affirmatively false or fraudulent. In fact, the short titles accurately describe at least one major aspect of Proposition 201—the 20% rollback of automobile insurance rates. Moreover, the language employed by Kromko is "misleading," if at all, *only* because it is incomplete. We cannot say that a title's failure to describe every aspect of a proposed measure always creates the degree of fraud, confusion, and unfairness sufficient to invalidate the petition upon which the title rests.[7]

Unlike the title at issue in *Clark v. Jordan*, 7 Cal.2d 248, 251, 60 P.2d 457, 459 (1936), which described everything that could induce electors to sign but omitted the one aspect that would cause hesitation—the imposition of new taxes, Kromko's short titles do not describe all the sweet and exclude all the bitter. Although no one can argue that the possibility of lower automobile insurance rates would not lure the attention of even the most uninterested elector, who can say that the prospect for other pro-consumer reforms, such as the creation of an insurance consumer protection fund or a private cause of action for single violations of the Unfair Claims Settlement Practices Act, would not generate similar voter support. Besides, even if electors had questions as to the entire nature and scope of the measure, they easily could have referred to the "full and correct" copies of Proposition 201 that were attached to the petition signature sheets, as required by Ariz. Const. art. 4, pt. 1, § 1(9), and A.R.S. § 19–121(A).

We must also be mindful of the task faced by petition proponents and circulators, who are not only "members of the largest legislative body in the state," but are drawn, for the most part, from the ranks of volunteers animated by a purpose that to them at least appears good. *See Whitman*, 59 Ariz. at 221–22, 125 P.2d at 451 (quoting *Re Initiative Petition No. 23*, 35 Okla. 49, 127 P. 862 (1912)). They must solicit voter interest from what is widely perceived as an indifferent electorate, and rare is the elector who stops long enough in the summer heat to read or listen to a complete description of the entire nature and scope of a proposed measure. For this reason, circulators often employ a variety of short, verbal catch-words or phrases during the circulation process to call attention to their specific cause. This is especially true when voters face a large number of measures, such as the 13 propositions on the November 1990 general election ballot.

Few differences exist between the descriptive, oral "one-liner" a circulator may say to an elector passing by and the descriptive slogan printed on a petition signature sheet. Notwithstanding their incomplete nature, both forms of exchange constitute legitimate political debate and facilitate the main purpose behind the signature requirement. This purpose is not to make a proposed measure law, but to "make certain that the subject matter of the petition *is of interest* to a sufficiently large segment of the electorate such as would entitle the measure to a place on the ballot and justify the expense of printing and publicity required for submission of it to a

---

7. Miller cites cases in other jurisdictions, such as Oregon and California, suggesting an opposite result. *See, e.g., Kouns v. Roberts*, 299 Or. 487, 704 P.2d 100 (1985) ("victims' rights initiative" caption deemed unfair because the measure included substantive provisions unrelated to victims' rights); *Clark v. Jordan*, 7 Cal.2d 248, 60 P.2d 457 (1936) (short title indicated the abolition of some taxes, but failed to specifically mention new taxation schemes). The trial judge, however, correctly distinguished those cases as proceedings in which petitions had been examined to determine compliance with statutes specifically regulating the form and content of titles and captions. *See Kouns*, 299 Or. at 492, 704 P.2d at 103 (statutes required titles to include a caption by which the measure is commonly referred and in all parts be sufficient and fair); *Clark*, 7 Cal.2d at 249, 60 P.2d at 458 (statute required short titles showing the nature of the petition and the subject to which it relates). No comparable guidelines exist in Arizona. More important, none of the jurisdictions cited by Miller adhere to Arizona's policy of sustaining petitions unless an express constitutional or statutory rule provides otherwise. *See Whitman*, 59 Ariz. at 220, 125 P.2d at 451.

vote of the people." *Renck*, 66 Ariz. at 328, 187 P.2d at 661 (emphasis added); *see also Columbia River*, 232 Or. at 236–37, 375 P.2d at 74 (O'Connell, J., dissenting) (signers may not favor the measure but still feel that the issue should be resolved by the people).

Finally, we believe the foregoing reasoning is in line with *Tilson*, in which we declined to rule an initiative measure unfair and defective because the title did not indicate other provisions of the constitution that would be affected by the proposed amendment. 153 Ariz. at 473, 737 P.2d at 1372. In a special concurrence, the Vice Chief Justice emphasized the court's unwillingness to remove initiatives from the ballot simply because the court might believe it was not submitted to the voters in a fair form. He reasoned that the legislature should address questions of fairness and clarity in drafting. *Id.* Our decision today reflects similar reluctance in the absence of legislative action.

Given the facts and circumstances particular to this case, as well as the accompanying policy concerns, we hold that the description of Proposition 201 provided in the short titles attacked by Miller, albeit incomplete, does not render Kromko's petition legally insufficient.

### Disposition

We affirm the judgment of the trial court and deny special action relief. Having been unsuccessful in his appeal, Miller must bear the costs requested by Kromko.[8] A.R.S. §§ 12–331, –342. The mere fact that Kromko filed a partially unsuccessful cross-appeal does not affect Miller's obligation. *See Borrow v. El Dorado Lodge*, 75 Ariz. 218, 220, 254 P.2d 1027, 1029 (1953).

To receive attorneys' fees in this matter, Kromko must cite express authority or otherwise qualify under equitable considerations. *See Cortaro Water Users' Ass'n v. Steiner*, 148 Ariz. 314, 316, 714 P.2d 807, 809 (1986) (Arizona follows the general American rule that each party must bear its own fees absent authority under statute or contract directing otherwise); *Arnold v. Dept. of Health Services*, 160 Ariz. 593, 608–09, 775 P.2d 521, 536–37 (1989) (notwithstanding the American rule, courts may award attorneys' fees under equitable rules, including the private attorney general doctrine). Kromko's failure to perform either task, coupled with our desire to avoid placing a chill on future petition challenges by private citizens, compels us to deny his request for attorneys' fees.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

---

8. After reviewing supporting affidavits, we do not believe that Kromko seeks reimbursement for costs related to his special action.