SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| STEPHAN G. ZAJAC, a single man, and EVELIA S. ZAJAC, a single woman, | ) Arizona Supreme Court<br>) No. CV-03-0397-PR<br>) |
| Plaintiffs-Appellants, | ) Court of Appeals<br>) Division Two<br>) No. 2 CA-CV 03-0077<br>) |
| v. | ) Pinal County Superior |
| CITY OF CASA GRANDE, an Arizona municipal corporation; WAL-MART INCORPORATED, | ) Court<br>) No. CV200200932<br>)<br>) |
| Defendants-Appellees. | ) **O P I N I O N**<br>) |
| _____ | ) |

No. CV200200932
Pinal County Superior Court
The Honorable Kenneth L. Fields, Judge
**JUDGMENT REINSTATED**

_____

No. 2 CA-CV 03-0077
Court of Appeals, Division Two
**VACATED**

_____

Morrill & Aronson, P.L.C.                                      Phoenix
     By   John T. Moshier
          Scott D. Larmore
     and
Cole, Massey & Finley                                      Casa Grande
     By   A. Thomas Cole
Attorneys for Plaintiffs-Appellants

Casa Grande City Attorney's Office                        Casa Grande
     By   Kay Bigelow
Attorneys for Defendant/Appellee City of Casa Grande

Bryan Cave LLP                                                Phoenix
     By   Steven A. Hirsch
          Stanley B. Lutz
Attorneys for Defendant/Appellee Wal-Mart Incorporated

_____

**J O N E S, Chief Justice**

¶1    The City of Casa Grande, after several hearings before the Planning and Zoning Commission and the City Council, rezoned certain property by municipal ordinance. The rezoning ordinance was subsequently upheld by the local electorate in a referendum election. The plaintiffs, two Casa Grande residents, allege that the city failed to comply with notice requirements applicable to the hearing and enactment process and ask that we nullify the referendum and invalidate the ordinance. Because the plaintiffs failed to assert a timely claim, we hold they are now barred from obtaining the relief sought.

**I.**

¶2    In September 2001, Wal-Mart, Inc. filed an application with the City requesting rezoning for approximately twenty-eight acres of property on the southeast corner of Florence Boulevard and Arizona Road in Casa Grande. Wal-Mart asked the City to change the property zone from "Urban Ranch" to "Planned Area Development." *See* Casa Grande City Code ("City Code") § 17.16.010 (2001) (designating zoning classifications). On October 4, 2001, a hearing took place before the Casa Grande Planning and Zoning Commission to consider Wal-Mart's request. At the hearing, the Commission decided by a five-to-two vote to recommend that Wal-Mart's request be denied. Wal-Mart appealed the recommendation to the City Council and, at a November 5, 2001 hearing, the Council

2

granted Wal-Mart's rezoning request by a four-to-three vote. In a subsequent meeting, November 19, 2001, the City Council formally adopted the rezoning request as Ordinance No. 1178.167. Finally, on December 6, 2001, the Planning and Zoning Commission, by a five-to-two vote, approved Wal-Mart's proposed major site plan.

¶3    Some time after city approval of the Wal-Mart plan, a group of residents opposed to the rezoning circulated a petition to refer the ordinance to the voters in a special election. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 19-101 to 19-143 (2001). Sufficient signatures were obtained, and the referendum was held May 21, 2002. Casa Grande voters approved the rezoning ordinance by a vote of 1,784 to 1,466.

¶4    More than three months later, on September 12, 2002, Stephan G. Zajac and his mother, Evelia S. Zajac (collectively, "Zajac"), filed a complaint in superior court against the City and Wal-Mart challenging the validity of the rezoning ordinance. Zajac, the owner of property located at least in part within 200 feet of the proposed Wal-Mart, charges the City with failure to give notice of the public hearings as required by Arizona law.

¶5    Zajac's suit is grounded in both the Casa Grande City Code, and in state statutory rezoning requirements imposed on all municipalities when addressing requests to rezone property. *See* City Code §§ 17.68-480 to -550 (2001); A.R.S. § 9-462.04 (Supp. 2003). The statutes require a municipality to "adopt by ordinance

3

a citizen review process that applies to all rezoning and specific plan applications that require a public hearing." A.R.S. § 9-462.03(A) (Supp. 2000). Pursuant to this requirement, the City enacted a citizen review process which expressly includes procedures for notice and hearing when property is being rezoned. Notice of the time, date, place, and purpose of the hearing must be provided to the general public by publication in a newspaper of general circulation at least fifteen days prior to the first hearing. City Code § 17.68.500(B). The parties do not dispute that the City complied with these procedures. The City Code also requires that a "similar notice shall be made at least fifteen days before the day of the first hearing to each owner of property situated wholly or partly within two hundred feet of the property to which the rezoning relates." City Code § 17.68.500(C).

¶6    Cities are required by law to "follow[] the procedure prescribed in the citizen review process" any time consideration of a plan is undertaken to adopt a "zoning ordinance that changes any property from one zone to another." A.R.S. § 9-462.03(B). Thus, by reason of § 9-462.03, a failure to notify the owners of property located within the 200-foot limit results in not only a violation of the City Code but also a violation of state law.

¶7    The City mailed the requisite notice of the hearings to the adjacent property owners. Although Zajac's name appeared on title records as the owner of property located within 200 feet of

4

the proposed building site, he resided with his mother elsewhere in Casa Grande. The notice or notices were apparently mailed to the subject property which, at all times relevant, was leased to a tenant. One can conclude from the record that neither Zajac nor his mother received the mailed notice.

¶8 Nevertheless, as noted, the hearings occurred, the ordinance was adopted, and the referendum took place. Then, more than three months after the referendum, Zajac filed the instant suit in superior court alleging that the City failed to give notice, that the rezoning ordinance was void *ab initio*, and that no change in the property zoning ever occurred. The suit requested that the court enjoin the City from issuing construction permits or approvals to Wal-Mart.

¶9 On February 18, 2003, the superior court issued a minute entry dismissing Zajac's claim. The court held that the City and Wal-Mart "complied in all respects" with statutory notice requirements and "substantially complied" with the requirements of the City Code. Finding substantial compliance to be "all that is required" under *Schwarz v. City of Glendale*, 190 Ariz. 508, 950 P.2d 167 (App. 1997), the trial court denied Zajac's request for relief.[1]

---

[1] The trial court upheld the ordinance on the theory of "substantial compliance" with the notice requirements. Our disposition of this case in today's opinion makes it unnecessary for us to address the compliance issue.

¶10      Zajac appealed and, in a memorandum decision, the court of appeals reversed, rejecting the "substantial compliance" standard and holding that *Hart v. Bayless Investment & Trading Co.*, 86 Ariz. 379, 346 P.2d 1101 (1959) and its progeny demand "strict compliance" with the notice requirements for public hearings on proposed zoning changes. *Zajac v. City of Casa Grande*, 2 CA-CV 2003-0077 ¶ 25 (Ariz. App. Oct. 6, 2003) (mem. dec.). The appellate court further found that by not mailing notice to the address of Zajac's actual residence, the City and Wal-Mart "negligent[ly] fail[ed] to comply with the city's own notice by mail requirement." *Zajac*, 2 CA-CV 2003-0077, slip op. at ¶ 40. The court also rejected additional arguments made by Wal-Mart, expressly finding the referendum and Zajac's prior knowledge of the referendum to be irrelevant. *Zajac*, 2 CA-CV 2003-0077, slip op. at ¶¶ 43-44. The court declared the rezoning ordinance null and void. *Zajac*, 2 CA-CV 2003-0077, slip op. at ¶ 46.

¶11      Wal-Mart and the City of Casa Grande jointly petitioned this court for review of the appellate decision. We granted review and directed specifically that the parties submit supplemental briefs on the effect, if any, of the zoning ordinance referendum on plaintiffs' right to sue. Our jurisdiction is established by Article VI, Section 5(3) of the Arizona

6

Constitution, A.R.S. § 12-120.24 (2003), and Rule 23 of the Arizona Rules of Civil Appellate Procedure.

**II.**

¶12     Adoption of a city ordinance by the city's governing authority, the city council, is an exercise of legislative power. Our courts have consistently refrained from ajudicating substantive attacks on new city ordinances prior to completion of the adoption process; that is, until the ordinance becomes law. But in cases in which procedural defects in the adoption process are alleged, our decisions have invalidated city and county ordinances for failure to follow statutorily required procedures. *See, e.g., Hart*, 86 Ariz. 379, 346 P.2d 1101 (invalidating county ordinance for failure to comply with procedural requirement of state Zoning Act); *Hyland v. City of Mesa*, 112 Ariz. 66, 537 P.2d 936 (1975) (invalidating city ordinance for failure to comply with procedural requirements of state law).

¶13     Today's case arises in the context of a law that had been approved by the voters of Casa Grande in a referendum election, and requires that we focus on when challenges to the procedures by which this law was adopted must be made. Early in our state's history, this court considered a challenge similar to that presented by Zajac. In *Allen v. State*, 14 Ariz. 458, 130 P. 1114 (1913), the legislature enacted a statute making it a crime to kill a quail without a license. *Id*. at 459-60, 130 P. at 1114-

7

15. After a sufficient number of the voters signed referendum petitions, a state referendum followed in which voters approved the law. *Id*. at 464, 130 P. at 1116. The defendant, who was charged under the statute and admitted killing the quail, argued that the statute was invalid, not as to its substance, but because the matter was allegedly not submitted to the voters at the proper election, and because pre-referendum publicity required by the state constitution had not been provided. *Id*. at 461, 130 P. at 1115. This court addressed these procedural challenges and held that the defendant's failure to raise the objections before the referendum election barred his suit:

> If objections had been made in the early stages of the process of submission for the reasons now assigned, the questions would have been subjects of judicial investigation and determination. . . . Timely appeal to the courts upon the questions now raised, if meritorious, would have settled the matter before the election was had. However, the measure was submitted to the voters without question. They were invited to believe that the formalities of the law pertaining to the submission of the measure had been fully met. The expense of the election was incurred, and the electors, imbued with the conviction that they were performing one of the highest functions of citizenship, and not going through a mere hollow form, we may assume, investigated the question and went to the polls and voted thereon.

*Id*. at 461-62, 130 P. at 1115.

### III.

¶14 This court has consistently followed *Allen* when considering challenges to the *procedures* leading up to initiative and referendum elections. *See Fairness & Accountability in Ins.*

8

*Reform v. Greene*, 180 Ariz. 582, 587, 886 P.2d 1338, 1343 (1994) ("[T]he procedures 'leading up to an election cannot be questioned' after the vote but 'must be challenged before the election is held.'") (quoting *Tilson v. Mofford*, 153 Ariz. 468, 470, 737 P.2d 1367, 1369 (1987)); *see also Hernandez v. Frohmiller*, 68 Ariz. 242, 259, 204 P.2d 854, 865 (1949) (refusing, after the vote, to invalidate a ballot initiative alleging defects that occurred in the process prior to the election); *Renck v. Superior Court*, 66 Ariz. 320, 326-27, 187 P.2d 656, 660-61 (1947)(same); *Kerby v. Griffin*, 48 Ariz. 434, 444, 62 P.2d 1131, 1135 (1936) ("[I]f parties allow an election to proceed in violation of the law which prescribes the manner in which it shall be held, they may not, after the people have voted, then question the procedure."); *Abbey v. Green*, 28 Ariz. 53, 68, 235 P. 150, 155 (1925) ("[A] duty is imposed upon one who would question the correctness or regularity of an election to act promptly, and, if he has information before the election of any defects in the proceedings, he must take steps to prevent the election . . . , or he will be regarded as having waived them.").

¶15    Zajac's argument — that he was harmed by the City's failure to give notice — unmistakably raises a procedural not a substantive issue. *See Winkle v. City of Tucson*, 190 Ariz. 413, 416, 949 P.2d 502, 505 (1997) (stating that "fail[ures] to comply with publication requirements" in initiative petitions are

9

"procedural defects"); *Hart,* 86 Ariz. at 391, 346 P.2d at 1110 (identifying failures to comply with notice requirements as "procedural infirmities").  Zajac does not assert that the City lacked the substantive power to rezone property within its jurisdiction or that the ordinance violates the Constitution or a statute.[2]

¶16     Zajac does contend, however, that the failure to notify pertained to the rezoning hearings, not the subsequent referendum, and that the City therefore lacked jurisdiction to enact the

_____

     [2]     Although Zajac does not expressly argue that notice requirements are substantive, he cites *Hart* as stating that a failure to provide proper notice is a "jurisdictional" defect. To the extent this argument implies that notice requirements are not procedural, *Hart* is unsupportive.  The issue whether the defects were "jurisdictional" arose in *Hart* only after the court determined the defects that had occurred were in fact procedural:

> It is clear from this record that the mandate of the Zoning Act was ignored.  The question then arises whether these procedural defects are of such gravity that the ordinances must be invalidated.
>
> . . . [S]uch ordinance will not be set aside unless defects are shown which are jurisdictional in nature. The remaining question, then, is whether the failure to comply with the notice and hearing conditions of the Zoning Act left the Commission and Board without jurisdiction to adopt either or both of the ordinances in question.

*Hart v. Bayless Inv. & Trading Co.,* 86 Ariz. 379, 390, 346 P.2d 1101, 1109 (1960).

Our analysis in the instant case, therefore, is not whether defects occurred or whether existing defects are "jurisdictional." Rather, as a preliminary matter, we ask only whether the alleged defects were procedural.

ordinance at the rezoning stage.[3]  But even if his argument were correct as to the rezoning hearings, his complaint is really no different from the complaint asserted in *Allen* and its progeny – that procedural defects prior to the referendum election invalidated the election.

¶17     The *Allen* principle applies here.  Allen, like Zajac, failed to assert his objection until after the referendum had occurred.  14 Ariz. at 465-66, 130 P. at 1116-17.  Like Allen, Zajac could have raised an objection prior to the referendum election.  The record is clear that Zajac had actual knowledge prior to the election that the proposed rezoning ordinance had been adopted by the City and would be referred to the voters in an election.  He placed a sign in his yard manifesting opposition to the rezoning and, indeed, cast his personal vote against the rezoning ordinance in the referendum.  As a result of his failure to challenge alleged procedural defects before the election, Zajac, like Allen, has waived his right to object.

¶18     Finally, the record indicates Zajac actually recognized the validity of the referendum he now challenges.  Having had actual notice of the impending election, he claims to have "await[ed] the results of [the] referendum" to file suit because "if [the election had been] decided in [his] favor [, it] would

---

[3]     The Zajacs, in fact, expressly argue that the referendum should never have taken place and was therefore of no effect.

11

have mooted th[e] lawsuit." In other words, he effectively recognized the election as legitimate, but did so *only if the ordinance were defeated*. Dissatisfied with the election results, Zajac now argues that voters lacked authority to act on the matter. He cannot have it both ways; that is, he cannot allow the election to proceed without objection, and then be permitted thereafter to assert his protest. The *Allen* court employed similar reasoning in an analogue to the doctrine of estoppel:

> While estoppel may not technically bind either party to an election, yet where a mere defect of form exists, which may, if presented seasonably, be fully corrected, and is not suggested until after the election is over, there is eminent justice in applying the principles of estoppel, and holding that they who have gone to trial on the merits shall not, when beaten there, go back to an amendable defect in the preliminary proceedings.

14 Ariz. at 480, 130 P. at 1123 (quoting *Prohibitory Amendment Cases*, 24 Kan. 700 (1881)); *see also Renck*, 66 Ariz. at 325, 187 P.2d at 659 ("[I]f parties allow an election to proceed in violation of the law . . . they may not, after the people have voted, then question the procedure.") (quoting *Kerby v. Griffin*, 48 Ariz. 434, 444, 62 P.2d 1131, 1135 (1936) (citations omitted)).

**IV.**

¶19     Like the *Allen* court, we perceive justice in declining to upset the stated will of the voters of Casa Grande. For the foregoing reasons, we hold that Zajac, having failed to file a timely complaint, has waived his right of action. Clearly, the post-referendum filing is subject to the doctrine of waiver, a

12

doctrine frequently referred to as the equitable doctrine of estoppel by laches. We therefore vacate the memorandum decision of the court of appeals and order reinstatement of the judgment of the trial court.

        _____
        Charles E. Jones
        Chief Justice

CONCURRING:

_____
Ruth V. McGregor, Vice Chief Justice


_____
Rebecca White Berch, Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice