NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ROBERT WOLLNER, *Plaintiff/Appellant,*

*v.*

SPANISH HILLS CONDOMINIUM ASSOCIATION, *Defendant/Appellee.*

No. 1 CA-CV 19-0341
FILED 3-3-2020

---

Appeal from the Superior Court in Maricopa County
No. CV2017-055584
The Honorable Theodore Campagnolo, Judge

**AFFIRMED**

---

COUNSEL

Robert Wollner, Phoenix
*Plaintiff/Appellant*

Maxwell & Morgan, P.C., Mesa
By Chad M. Gallacher
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

---

**W I N T H R O P**, Judge:

¶1 Robert Wollner ("Wollner") appeals the superior court's grant of summary judgment in favor of the Spanish Hills Condominium Association ("Spanish Hills"). Wollner claims he was legally elected to Spanish Hills' Board of Directors, but that Spanish Hills prevented him from serving on the Board by holding a second—and in his view illegal—election. Wollner also argues an arbitrator in the case acted improperly when he conducted an arbitration without jurisdiction, and the superior court acted improperly when it failed to penalize Spanish Hills for not abiding by the community's written bylaws. For the following reasons, we affirm the grant of summary judgment in favor of Spanish Hills.

## FACTS AND PROCEDURAL HISTORY

¶2 Article IV, section 2, of Spanish Hills' bylaws states: "At each annual meeting the Members shall elect three (3) directors for a term of one (1) year." Article V, section 1, of the bylaws makes clear that "[n]omination for election to the Board of Directors shall be [made] by a Nominating Committee" or "made from the floor at the annual meeting."

¶3 In 2017, Spanish Hills gave written notice to all community members that the community's annual meeting was set for July 27, 2017. The notice advised that the meeting would "include an election of Directors to the Board of Directors" and that any member interested in serving on the Board could return an enclosed form to have their name included on the election ballot. The notice also made clear that members could vote for the Board either "in person at the meeting or by absentee ballot."

¶4 Wollner expressed an interest in serving on the Board, and his name was included on the absentee ballots sent out to members before the July 27 annual meeting. Wollner's was one of three names included on the ballot for the three open Board positions.

¶5 On July 24, 2017, Spanish Hills sent out a notice cancelling the July 27 meeting after it realized the candidates included on the ballot had not been nominated by a Nominating Committee, as required by Spanish Hills' bylaws. Thereafter, the annual meeting was reset to August 29, 2017, and a Nominating Committee nominated four individuals for the Board, whose names were placed on a new absentee ballot that was then mailed out to members. Wollner was not one of the individuals selected by the Nominating Committee; accordingly, his name was not included on the new ballot.

¶6        At no point before the August 29 meeting did Wollner object to cancellation of the July 27 meeting, to resetting the meeting to August 29, to discarding the initial ballots that did not comply with the bylaws, or to his name not being included on the new ballot.  Wollner attended and participated in the August 29 meeting.  During the meeting, Wollner did not voice any objection to either the inclusion or the subsequent election of the three candidates listed on the new ballot,[1] nor did he seek to nominate himself from the floor of the meeting as the bylaws allowed.

¶7        On September 18, 2017, Wollner filed a civil complaint with the superior court alleging Spanish Hills ignored the proper Board election results from the July election and improperly held what he characterizes as a second, invalid election in August.  Wollner requested the court nullify the August election and its results, and find a valid election had occurred in July once the absentee ballots were sent out.  The relief he requested was a declaration that he had been duly elected to the Board and an order directing Spanish Hills to allow him to serve his duly elected position.

¶8        On that same day, Wollner also filed a certificate of compulsory arbitration, certifying that the case was subject to mandatory arbitration.  Based on that certification, court staff followed an administrative process that resulted in an attorney being appointed to serve as the arbitrator in this matter.  An arbitration hearing was properly scheduled and held on June 6, 2018, attended by both parties.  After reviewing the evidence and submissions of both parties, the arbitrator ruled that he lacked jurisdiction over the action under Arizona Rule of Civil Procedure ("Rule") 72(b)(1)(A) because Wollner was seeking affirmative relief other than a money judgment.  Accordingly, the arbitrator referred the matter back to the superior court.

¶9        Following referral back to the superior court, Wollner filed multiple motions objecting to the arbitration process that had occurred.[2]

---

[1]        Wollner acknowledges his lack of objection at the August 29 meeting but explains he purposefully remained silent because voicing an objection "would have resulted in arguments and turmoil" and because he "[knew] full well that he planned to file a lawsuit in the Maricopa County Superior Court soon after the meeting."

[2]        Wollner filed four motions related to the arbitration: (1) Motion to Deny Payment to Arbitrator; (2) Motion to Vacate the Arbitrator's Decision;

The court denied all motions, holding the arbitrator had "acted professionally, properly, ethically, and in accordance with Rules 72-76." The court stated that Wollner should have known his complaint was clearly not subject to compulsory arbitration and "should not have filed the Certificate of Compulsory Arbitration." The court also denied Spanish Hills' request for attorneys' fees and costs from the arbitration proceedings, noting that Spanish Hills "should have performed its due diligence to realize that compulsory arbitration was not available."

**¶10**        Wollner filed a motion for summary judgment on September 18, 2018, and Spanish Hills filed a response and cross-motion for summary judgment on October 22, 2018. The superior court heard arguments from both sides and took the matter under advisement. The court issued its ruling on February 5, 2019, granting Spanish Hills' motion for summary judgment. The court ruled that no election was held on July 27, 2017, and that the annual meeting, including the election, was properly rescheduled to August 29, 2017, in accordance with the bylaws.[3]

**¶11**        Wollner timely appealed to this court, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

**ANALYSIS**

*I.        Standard of Review*

**¶12**        Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Rule 56(a). Summary judgment is granted when "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).

---

(3) Motion for Sanctions against Arbitrator; and (4) Motion for Compensation from Arbitrator.

[3]        The superior court also found that Wollner's requested relief—to be allowed to serve on the Board as elected—was "a factual and legal impossibility" because "the one-year term for which [Wollner] sought to be elected has expired" and "a new set of Board members was elected" at the 2018 annual meeting.

**¶13** We review a superior court's grant of summary judgment *de novo* and view the facts in the light most favorable to the party against whom summary judgment was entered. *United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 140, ¶ 26 (App. 2006). We will affirm the grant of summary judgment "if it is correct on any ground." *Delmastro & Eells v. Taco Bell Corp.*, 228 Ariz. 134, 138, ¶ 8 (App. 2011).

**¶14** We also review the interpretation of a contract *de novo*. *Great W. Bank v. LJC Dev., LLC*, 238 Ariz. 470, 475, ¶ 9 (App. 2015).

     *II.*     *Actions of the Arbitrator*

**¶15** On appeal, Wollner argues that the arbitrator conducted an "illegal" arbitration.[4] Wollner complains the arbitrator required the parties to submit documents and evidence, and to participate in an arbitration hearing, even though the arbitrator lacked jurisdiction over the action because the relief sought was not monetary. *See* Rule 72(b)(1)(A). Wollner seeks compensation for the time and money he wasted in the arbitration process.

**¶16** We disagree with Wollner's characterization of the arbitration. The explicit provisions of Rule 72 control here. First, we emphasize that it was Wollner himself who submitted a certificate of compulsory arbitration to the superior court, which, after no objection from Spanish Hills, resulted in the case being automatically referred to arbitration. Wollner's argument that he should be compensated for the "illegal" arbitration holds little weight considering he is the one who initiated the compulsory arbitration process and acknowledged in his certification that he knew the case was therefore subject to a set of uniform rules of procedure for arbitration. As the superior court explained in response to Wollner's motions regarding the arbitration proceedings, the arbitrator was "properly appointed, and had no choice but to proceed" in light of Wollner's certification of compulsory arbitration. Further, based on the clear provisions of Rule 72(e)—including the explicit responsibilities

---

[4] Spanish Hills argues all of Wollner's claims should be waived on appeal because Wollner "did not provide a Table of Citations," "failed to identify any statutory authority or case law to support his position," and "failed entirely to develop his arguments on appeal or to support them with reference to the record." *See* Ariz. R. Civ. App. P. ("ARCAP") 13. In our discretion, we only hold as waived those claims which are completely without supporting argument or citations to any legal authority.

assigned to the parties to certify and/or contest whether the case was subject to compulsory arbitration—the arbitrator had no reason to believe that arbitrability was an issue that he needed to analyze and determine upon assignment of the case. In retrospect, we agree it might have been more efficient if the arbitrator had conducted a preliminary review of the pleadings to determine whether Wollner was seeking relief that the arbitrator could not legally provide, but we will not second-guess the arbitrator's decision to first consider that issue after hearing from the parties at an already-scheduled hearing before properly arriving at such legal conclusion. Further, there is nothing in the record to suggest the arbitrator acted improperly by referring the matter back to the superior court once it was clear the relief Wollner was seeking could not be ordered by an arbitrator and that, pursuant to Rule 72(e), his complaint was not subject to compulsory arbitration.

¶17 Finally, Wollner cites no legal authority that would allow him to recover his costs associated with the arbitration proceeding, nor any authority allowing this court to order compensation to him for the time "wasted" in arbitration. Because there is neither valid reason nor legal authority to do so, we will not grant Wollner compensation for the time or money he may have spent in connection with the arbitration proceedings he himself initiated.

### III. *Validity of August Board Election*

¶18 Wollner argues the superior court erred in holding the August 29 election was valid. He maintains the July election was valid and properly took place when absentee ballots were sent out to the community members.

¶19 In response, Spanish Hills argues it properly rescheduled the annual meeting and election in order to be compliant with the bylaws' requirement that candidates for election to the Board be selected by a Nominating Committee.

¶20 The heart of this dispute arises out of the procedural requirements for the Board election as detailed in Spanish Hills' bylaws. The bylaws constitute a contract between Spanish Hills and the community members. *See Rowland v. Union Hills Country Club*, 157 Ariz. 301, 304 (App. 1988) ("The rights of members of a private organization are governed by the articles of incorporation and by-laws, which constitute a contract between the members and the organization."). "A general principle of contract law is that when parties bind themselves by a lawful contract the

6

terms of which are clear and unambiguous, a court must give effect to the contract as written." *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, 86, ¶ 12 (App. 2006).

**¶21**        Here, Spanish Hills' bylaws plainly state, "At each annual meeting the Members shall elect three (3) directors for a term of one (1) year." Thus, under the clear language of the bylaws, the election occurs at the annual meeting. Accordingly, there was no election in July, even if absentee ballots had already been sent out, because there was no annual meeting held. This procedure also conforms to applicable statutory requirements, which state that directors shall be elected "at each annual meeting after the first annual meeting, unless . . . [t]he articles of incorporation or bylaws provide some other time or method of election." A.R.S. § 10-3804(A)(2).

**¶22**        Further, "[t]he bylaws of a corporation may contain any provision for regulating and managing the affairs of the corporation that is not inconsistent with law or the articles of incorporation." A.R.S. § 10-3206(B). Spanish Hills' bylaws require that "[n]omination for election to the Board of Directors shall be [made] by a Nominating Committee" or "made from the floor at the annual meeting." This procedural requirement for the Board election is not inconsistent with Spanish Hills' other governing documents nor with applicable law. Had Spanish Hills held the election in July without using a nominating committee, it would have been in violation of the bylaws and potentially liable for a breach of contract.

**¶23**        Because the bylaws clearly state that the election occurs at the annual meeting, and because Wollner acknowledges that no annual meeting occurred in July, his argument that the July election was valid has no merit. Wollner does not allege any procedural defects in the August election as supported by the bylaws or the record.[5] Summary judgment was properly granted in favor of Spanish Hills.

---

[5]        Wollner does not dispute that a Nominating Committee was properly used for the names on the August ballot. Wollner's main complaint regarding the August election is that Spanish Hills' "Governing Documents do not support a second election" after a valid election occurred in July. However, because no valid election occurred in July, this argument fails. Further, Wollner acknowledges that Spanish Hills had the authority to cancel the annual meeting but claims it did not have authority to cancel the election. The plain language of the bylaws does not support such a

¶24        We note that the parties argue at length about whether the superior court properly applied the holding in *Zajac v. City of Casa Grande*, 209 Ariz. 357 (2004). *Zajac* arose out of a dispute regarding a rezoning ordinance passed by the City of Casa Grande. Neither party here makes any argument for why this court should apply principles of public election law to a dispute over contractually-agreed-upon management procedures detailed in the bylaws of a private, nonprofit corporation. *Zajac* is inapplicable to our resolution of this case and we do not address either side's arguments related to it.

            *IV.        Sanctions against Spanish Hills*

¶25        Finally, Wollner argues the superior court erred in not penalizing Spanish Hills after it violated its bylaws by failing to use a Nominating Committee in the July 2017 election process. We find this argument has been waived because Wollner does not cite any legal authority in support of it.

¶26        This court will hold an argument waived if it is "wholly without supporting argument or citation to authority." *Bennett v. Baxter Grp., Inc.*, 223 Ariz. 414, 418, ¶ 11 (App. 2010) (quoting *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 93, ¶ 50 (App. 1998)); *see also* ARCAP 13(a)(7) (stating an argument section must contain "supporting reasons for each contention," "citations of legal authorities," and "appropriate references to the portions of the record on which the appellant relies").

¶27        Here, Wollner claims "the Courts generally penalize such Associations whose Board of Directors are in violation" of community bylaws and argues that penalizing the Board is "traditional, conforming to established practice or standards." But Wollner does not cite any legal authority for these broad statements.[6] Accordingly, this argument is waived.

---

distinction between the annual meeting and the election. And, of course, Spanish Hills did not "cancel" the election; it was in fact held in August, following compliance with the bylaws as to involvement of a Nominating Committee and appropriate notice to the members.

[6]        Wollner acknowledged in superior court filings that he "believes that there are no laws that require the Court to punish the Board of Directors."

**¶28**     Even were this argument not waived, Wollner argues in his opening brief that the superior court should have "punished" or "penalize[d]" Spanish Hills, but he does not articulate what sort of punishment or remedy would be appropriate. In earlier filings with the superior court, Wollner argued that "[w]hat is considered to be the punishment for violating the governing documents is the Association loses the lawsuit and a judgment is given to the plaintiff for his costs." Wollner was not entitled to a judgment in his favor, as detailed *supra*. Moreover, the superior court appropriately awarded Spanish Hills its taxable costs under A.R.S. §§ 12-341 and 12-332 because Spanish Hills was the successful party below. There is no basis to award Wollner his costs.

>    *V.     Attorneys' Fees and Costs*

**¶29**     Spanish Hills requests an award of attorneys' fees and costs incurred on appeal pursuant to A.R.S. § 12-341.01 and to Article XII, Section 15, of Spanish Hills' CC&Rs, which provides that in an action to enforce compliance with or recover damages for any violation of Spanish Hills' governing documents or bylaws, the prevailing party is entitled to recover their reasonable attorneys' fees. We award Spanish Hills, as the prevailing party, its reasonable attorneys' fees and costs incurred on appeal upon compliance with ARCAP 21(b). *See Chase Bank of Ariz. v. Acosta*, 179 Ariz. 563, 575 (App. 1994) ("A contractual provision for attorneys' fees will be enforced according to its terms.").

## CONCLUSION

**¶30**     For the foregoing reasons, we affirm the grant of summary judgment in favor of Spanish Hills.



AMY M. WOOD • Clerk of the Court
FILED:   AA